[No. D053096. Fourth Dist., Div. One. June 18, 2009.]

HOLLY LOEFFLER, Plaintiff and Respondent, v.
WILLIAM M. MEDINA, Defendant and Appellant.

**COUNSEL**

Stephen H. Frantz; and Dennis Seymour for Defendant and Appellant.

William M. Henrich for Plaintiff and Respondent.

**OPINION**

**IRION, J.**—William M. Medina appeals from an order denying his application to terminate a domestic violence restraining order issued under Family Code[1] section 6345, subdivision (a) and requiring him to pay a portion of the attorney fees and costs of the prevailing party. Applying the standard applicable to motions to dissolve injunctions set forth in Code of Civil Procedure section 533, we conclude that the trial court was within its discretion to deny Medina's application. We further conclude that the trial court properly awarded attorney fees and costs to the prevailing party under section 6344. Accordingly, we affirm the order.

I

FACTUAL AND PROCEDURAL BACKGROUND

Holly Loeffler and Medina began living together in 1995 in a home they purchased together in Jamul, California. Their relationship ended in 2001, and Loeffler remained in the house. In April 2001, based on Loeffler's allegations about Medina's behavior toward her, the trial court issued a restraining order pursuant to section 6340, restraining Medina from, among other things, contacting, harassing, threatening, or coming within 200 yards of Loeffler and her teenaged daughter.[2] Pursuant to the statutory requirements for the issuance of a domestic violence restraining order, Medina was also ordered to relinquish any firearms in his possession.[3] (§ 6389.) The domestic violence restraining order was to expire in April 2004.

---

[1] Unless otherwise indicated, all further statutory references are to the Family Code.

[2] In support of her application for a restraining order, Loeffler explained that she and Medina had lived together since July 1995, and that in March 2001 he left the residence after she reported a domestic disturbance to the police. According to Loeffler, Medina returned a week later and, when she refused his request to come into the house to take a shower, he hosed himself off in the driveway and stood nude in front of the living room window while masturbating. She claimed that Medina threatened that he would be back another day, and she alleged that Medina had on a previous occasion walked naked into the same room as her daughter.

[3] The trial court stated, however, that upon proof that Medina was a reserve deputy sheriff, it would consider a modification of the firearms relinquishment order. (See § 6389, subd. (h) [setting forth the conditions under which a court may grant a peace officer an exemption from the firearms relinquishment requirement in connection with a domestic violence restraining order].)

Three years later, in April 2004, Loeffler applied for an extension of the restraining order. In support of her application, Loeffler submitted a declaration detailing the reasons she was concerned that Medina might harass or harm her if the restraining order was not renewed, including that (1) she was recently the prevailing party to a real property partition action against Medina concerning their jointly owned home, and (2) she had experienced several acts of vandalism and harassment in which she suspected Medina. The hearing on the application was delayed while Loeffler attempted to locate and serve Medina. The trial court eventually ruled that Medina could be served by substituted service directed to the clerk of the court. Medina did not appear for the hearing, and on June 23, 2004, the trial court ruled that the "restraining order is extended indefinitely. No expiration."[4]

Three months later, on August 23, 2004, Medina filed an application for an order terminating the permanent restraining order. Among other things, Medina contended that Loeffler knew his address but did not give him notice of the application to renew the restraining order, and he denied taking part in any harassment of Loeffler or vandalism of her property. Medina also stated, "I plan on returning to law enforcement work in the near future and I need to have the restraining order . . . terminated, as it was issued based on falsely stated facts and allegations." The trial court denied Medina's application to terminate the permanent restraining order, specifically rejecting Medina's argument that Loeffler had not given him proper notice of her application to renew the restraining order. There is no indication that Medina appealed this order.

Almost two years later, on June 7, 2006, Medina filed another application to terminate the permanent restraining order. In support of the application, Medina declared that he resided in Arizona, had recently married, had minimal contact with the San Diego area, and wanted the restraining order lifted because it was impacting his employment on government contracts and his possible future activity as a reserve law enforcement officer. The trial court continued the hearing on the application so that Loeffler could conduct discovery.

The trial court heard testimony on September 27, 2007, November 30, 2007, and February 15, 2008.[5] Loeffler testified to events occurring in 2002,

---

[4] However, the renewed restraining order shows an expiration date of June 23, 2077, which according to the parties is because the sheriff's registry requires an expiration date.

[5] In his trial brief, Medina argued that the restraining order should be terminated in that (1) he had moved to Arizona in 2005 and was married in 2006; (2) his contact with San Diego had been "minimal" in the last two years; and (3) "the removal of the restraining order . . . is essential for any part-time law enforcement work." In his trial declaration, Medina stated: "The restraining order . . . . should be terminated because I am in no way a threat to [Loeffler]. My

2003 and 2004, including Medina's violation of the restraining order during their litigation of the partition action, her belief that Medina was involved in vandalizing her property, and Medina's brother's videotaping of her property.

With respect to more recent events, Loeffler described (1) vandalism of her car in the summer of 2006 by an unknown person; (2) a telephone message she received in June 2006 from a man named J.D. Killer stating that he had found a check from Medina's construction company that had her phone number printed on it; (3) calls that she received in August 2006 from Medina's creditors who were given her telephone number; (4) unsolicited advertisements for life insurance received on her fax machine in mid-2006, which she thought may have been instigated by Medina because they were received around specific dates such as court hearings and filings; and (5) the fact that someone placed a "for sale" sign on her car in March 2007. Loeffler testified that she had seen Medina driving in the Jamul area several times, including on a date when he had claimed not to be in town. She testified that she is afraid of Medina, and that if the restraining order were lifted she would consider moving away to hide.

In addition, although Medina stated in a May 24, 2006 declaration that the only contact he had with San Diego in nearly a year was to collect and bring the rest of his personal property to Arizona, the evidence established that Medina was in San Diego several times during that period. The evidence. was that Medina was in San Diego in November 2005, in January 2006, and on May 21, 2006. Medina also admitted that he still had an apartment in La Mesa during 2006, and that he was in San Diego for a court appearance in July 2006 but stayed extra days to spend time with one of his sons. Moreover, Medina has numerous close family members living in the San Diego area, his new wife has close friends in the area with whom she and Medina stay when they are in town, and Medina's parents live less than three miles from Loeffler's house.

Medina testified about his recent work history, including several construction jobs for the military. He also stated that he was planning to move to New Mexico shortly, and that in New Mexico he was interested in volunteering for the fire department or the federal forestry station. He admitted that neither position would require him to carry a gun.

---

relationship with Ms. Loeffler is totally ended and I have moved on to a new state of residence and a new wife. . . . The restraining order impacts reserve law enforcement status . . . and impacts possible future military contracts."

The trial court issued a detailed statement of decision in which it acknowledged that it was uncertain about the legal standard for deciding an application to terminate a domestic violence restraining order. "The statute does not articulate what standard the Court should use upon a request to terminate an order. It should be noted that [Code of Civil Procedure section] 1008 provides that a party making a motion to reconsider or revoke an order must 'state by affidavit . . . what new or different facts, circumstances, or law are claimed to be shown.' While the present case is clearly not a motion under [Code of Civil Procedure section] 1008, the Court adopts this standard in considering the motion at hand."

Applying that standard, the trial court found that "there are few 'changed circumstances' in this case that would justify a termination of the order." Although Medina had moved to Arizona and recently married, the trial court observed that Medina nevertheless "returns to San Diego County to visit friends and relatives," and "[t]here has been contact since he moved out of state." Although Medina had asked that the restraining order be terminated because his employment in the construction industry required a security clearance, the trial court found that Medina "has been able to work in his field, despite the [restraining] order." Finally, although Medina had cited his desire to volunteer once again for law enforcement and possess firearms in that position, the trial court found that "[s]imply because he 'might' volunteer again is not justification to remove the order and allow him to possess firearms."

In its statement of decision, the trial court also discussed the standard for deciding an application to *renew* a domestic violence restraining order, as set forth in *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275 [10 Cal.Rptr.3d 387] (*Ritchie*). As the trial court observed, *Ritchie* held that "[a] trial court should renew the protective order, if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse." (*Id.* at p. 1290.) The trial court stated that "[a]lthough the present case is not a request by [Loeffler] to extend and make permanent a restraining order, this Court finds that [Loeffler] does, by a preponderance of the evidence, continue to have a reasonable apprehension of future abuse based upon the testimony and evidence presented." To support this conclusion, the trial court found that "the parties parted in a very hostile manner and resentment, particularly relating to the Jamul property, remains until this day. The Court, in assessing the credibility of the parties' testimony believes [Loeffler's] statement that she is afraid."

The trial court also expressly made a negative credibility determination with respect to Medina, finding that Medina "was not truthful in many particulars of his testimony, such as his education, his bills, type and length of work with the San Diego County Sheriff, and thus, his entire testimony is suspect."[6]

In the statement of decision, the trial court awarded Loeffler $25,000 in attorney fees and $1,504.85 in costs pursuant to a request made in Loeffler's initial response to Medina's application.[7] The trial court acknowledged that Loeffler had also requested the imposition of sanctions under section 271, but the trial court appears to have implicitly denied that request by not making any express finding that sanctions were warranted.[8]

Medina filed a timely appeal from the order denying his application to terminate the restraining order.[9]

II

DISCUSSION

A. *The Legal Standard Applicable to an Application to Terminate a Domestic Violence Restraining Order*

Medina's principal argument on appeal is that the trial court applied the wrong legal standard in denying his application to terminate the domestic

---

[6] Medina argues on appeal that the trial court lacked evidentiary support for its finding that Medina "was not truthful in many particulars of his testimony." We reject the argument. To the extent that Medina is challenging the trial court's credibility determination, "we will defer to the trier of fact on issues of credibility." (See *Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1065 [1 Cal.Rptr.2d 195].) To the extent Medina is arguing that the trial court's specific findings about Medina's lack of truthfulness are not supported by substantial evidence, we disagree. It was established at trial that Medina made several factual misstatements, including about whether he graduated from high school and about whether he was currently employed. During his testimony Medina also was forced to amend certain factual statements when confronted with contrary facts.

[7] Loeffler had sought an award of $45,842.50 in fees and $2,934.85 in costs.

[8] The trial court stated, "The final two issues involve a request by [Loeffler] for attorney's fees and sanctions pursuant to [section] 271. [¶] Costs of $1504.85 are ordered. Attorney's fees, payable by [Medina] to [Loeffler], are ordered in the amount of $25,000." Comments by counsel for Loeffler to the trial court established that the request for sanctions under section 271 was separate from Loeffler's request for an award of attorney fees and costs.

[9] The trial court's order is appealable pursuant to Code of Civil Procedure section 904.1, subdivision (a)(6), which permits an immediate appeal from "an order . . . refusing to grant or dissolve an injunction."

violence restraining order. According to Medina, the trial court should not have focused on whether Medina had established changed circumstances justifying the termination of the restraining order, but should instead have applied the analysis set forth in *Ritchie, supra,* 115 Cal.App.4th 1275, which governs a request to *renew* an expiring domestic violence restraining order. Medina argues that, based on *Ritchie,* the trial court should have imposed the burden of proof on Loeffler to establish, by a preponderance of the evidence, that she continues to have a reasonable apprehension of future abuse. He further argues that if the standard set forth in *Ritchie* is applied, substantial evidence does not support the trial court's order.

■ In addressing Medina's argument, we first must determine what standard the trial court should have applied in ruling on Medina's application to terminate the restraining order. At the outset, we note that statutory authority permits a party to file an application to terminate a domestic violence restraining order. Specifically, section 6345, subdivision (a) states that a domestic violence restraining order "may be renewed, upon the request of a party, either for five years or permanently, without a showing of any further abuse since the issuance of the original order, *subject to termination or modification* by further order of the court either on written stipulation filed with the court or *on the motion of a party.*" (Italics added.) Although the statute authorizes a court to terminate a permanent restraining order upon a party's motion, it provides no guidance with respect to the standard that a trial court should use when considering such a motion.

■ Unless another statute or rule applies, proceedings under the Family Code are generally governed by the standards set forth in the Code of Civil Procedure. (Fam. Code, § 210 [providing that "the rules of practice and procedure applicable to civil actions generally," including Code Civ. Proc., "apply to, and constitute the rules of practice and procedure" under the Fam. Code].) We thus turn to the Code of Civil Procedure to determine the standards that apply to a motion to terminate a domestic violence restraining order.[10]

■ A domestic violence restraining order is a type of injunction, as it is an "order requiring a person to refrain from a particular act." (Code Civ. Proc.,

---

[10] The trial court adopted the standard set forth in Code of Civil Procedure section 1008, which governs motions to reconsider or revoke an order. However, as the trial court acknowledged, Code of Civil Procedure section 1008 was not technically applicable because Medina did not bring a motion under that provision. Indeed, a motion under Code of Civil Procedure section 1008 must be brought within 10 days after service of the order at issue, which unquestionably was not the case here. (Code Civ. Proc., § 1008, subd. (a).)

§ 525 [defining an "injunction"].) Thus, in seeking to have the domestic violence restraining order terminated, Medina was seeking to dissolve an injunction. Code of Civil Procedure section 533 sets forth the standards for a trial court to apply when considering whether to dissolve an injunction. "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order." (Code Civ. Proc., § 533; see also *Luckett v. Panos* (2008) 161 Cal.App.4th 77, 85 [73 Cal.Rptr.3d 745] [Code Civ. Proc., § 533 "articulates three independent bases on which a modification [or termination] of an injunction may be predicated—(1) change in the facts, (2) change in the law, or (3) ends of justice."].)

■  Contrary to Medina's argument, the standards set forth in *Ritchie* do not govern his application to terminate the restraining order. *Ritchie* sets forth the standards that apply when a party is seeking to renew an expiring domestic violence restraining order. (*Ritchie, supra*, 115 Cal.App.4th at p. 1290.) Because the person seeking the renewal of the order is the petitioning party, that party bears the burden of establishing by a preponderance of the evidence that he or she still has a reasonable apprehension of future abuse. (*Ibid.*) Here, in contrast, where the party protected by a restraining order has *already* made the required showing to obtain a renewal of the order, and the restrained party later seeks to terminate the restraining order, the burden is on the restrained party to show by a preponderance of the evidence that one of the circumstances set forth in Code of Civil Procedure section 533 is present and justifies a termination of the restraining order. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 861 [107 Cal.Rptr.2d 841, 24 P.3d 493]  ■  ["As a general rule, the 'party desiring relief' bears the burden of proof by a preponderance of the evidence."]; Evid. Code, §§ 115, 500.)

Accordingly, in evaluating the trial court's decision denying Medina's application to terminate the restraining order, we will apply the standards set forth in Code of Civil Procedure section 533.[11]

---

[11] Although the trial court did not expressly identify Code of Civil Procedure section 533 as the provision that contained the governing standard, "[w]e do not review the trial court's reasoning, but rather its ruling. A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct." (*J.B. Aguerre, Inc. v. American Guarantee & Liability Ins. Co.* (1997) 59 Cal.App.4th 6, 15–16 [68 Cal.Rptr.2d 837].) Moreover, to the extent the trial court erred in applying the wrong standard, that error is harmless because in the course of its statement of decision, the trial court made factual findings that we are able to

B. *Standard of Review*

As in any review of an order denying a motion to dissolve an injunction, we apply an abuse of discretion standard of review. (*Salazar v. Eastin* (1995) 9 Cal.4th 836, 850 [39 Cal.Rptr.2d 21, 890 P.2d 43] [an order " ' "refusing to dissolve a permanent or preliminary injunction rests in the sound discretion of the trial court upon a consideration of all the particular circumstances of each individual case" ' and 'will not be modified or dissolved on appeal except for an abuse of discretion' "].) To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review. (*Sabbah v. Sabbah* (2007) 151 Cal.App.4th 818, 822 [60 Cal.Rptr.3d 175].)

C. *The Trial Court Did Not Abuse Its Discretion in Denying Medina's Application to Terminate the Restraining Order*

1. *Change in the Law*

██ Under Code of Civil Procedure section 533, one situation in which a court may dissolve an injunction is when "the law upon which the injunction . . . was granted has changed." Here, Medina makes no claim that the applicable law has changed, and we are not aware of any change in the applicable law. Accordingly, that basis for dissolving an injunction is not applicable.

2. *Material Change in the Facts*

The next basis set forth in Code of Civil Procedure section 533 for dissolving an injunction is when "there has been a material change in the

apply to the standard set forth in Code of Civil Procedure section 533 to determine that, had the trial court applied the correct standard, it would have reached the same result. (See Code Civ. Proc., § 475 ["No judgment, decision, or decree shall be reversed or affected by reason of any error . . . unless it shall appear from the record that such error . . . was prejudicial, and also that by reason of such error . . . , the said party complaining or appealing sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed."]; Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . in any cause . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; *Red Mountain, LLC v. Fallbrook Public Utility Dist.* (2006) 143 Cal.App.4th 333, 348 [48 Cal.Rptr.3d 875] ["Error is prejudicial if it is reasonably probable that a result more favorable to the appellant would have been reached absent the error."].)

facts upon which the injunction . . . was granted." Because it applied the standard adopted from Code of Civil Procedure section 1008, subdivision (a), which turns on whether there are "new or different facts [or] circumstances," the trial court, in effect, considered whether there had been a material change in the facts which would justify terminating the restraining order against Medina. Specifically, the trial court found that "there are few 'changed circumstances' in this case that would justify a termination order."

The changed circumstances that Medina relied on in seeking termination of the domestic violence restraining order were (1) that he had moved to Arizona and (2) that he had recently married. The trial court determined that those changes were not significant. As we will explain, the trial court was within its discretion to determine that the two changed circumstances that Medina relied upon were not material, and thus did not present a reason for terminating the restraining order.

First, as the trial court pointed out, although Medina moved out of state, there is ample evidence in the record that he has continuing contact with the San Diego area. Medina has friends and many close family members in the San Diego area, and his parents' home is less than three miles from Loeffler's house. Medina recently made several visits to the San Diego area, and Loeffler testified that she thought she saw him driving around town. As a result, the trial court reasonably could conclude that Medina had not carried his burden of proof to establish that circumstances had changed sufficiently to negate Loeffler's reasonable fear of having physical contact with him. Moreover, the restraining order also prevents Medina from having other types of contact with Loeffler such as telephone calls, messages or other types of harassment. Even though Medina moved out of state, the trial court reasonably could conclude that Medina failed to establish that circumstances had changed such that Loeffler now lacked a reasonable apprehension that she might be contacted by Medina in the form of telephone calls and faxes.

Second, the trial court could reasonably conclude that Medina's recent marriage did not constitute a material change of fact. When she applied for the permanent restraining order in 2004, Loeffler explained that she continued to fear Medina in part because the parties had been through contentious litigation over the real property that they had owned together, and because she suspected Medina in the recent vandalism of her property. Substantial evidence supports a finding that despite Medina's recent marriage, those grounds for the issuance of a permanent restraining order persisted, particularly because, as the trial court found, "the parties parted in a very hostile manner and resentment, particularly relating to the Jamul property, remains

until this day." Further, Loeffler testified that although Medina had moved to Arizona and recently married, she was still afraid of him. The trial court was entitled to credit this statement, and based on all of the facts before it, determine that Medina had not met his burden to establish that circumstances had sufficiently changed so that Loeffler no longer had a reasonable fear of him.

### 3. *The Ends of Justice*

The final situation in which an injunction may be dissolved under Code of Civil Procedure section 533 is when "the ends of justice would be served." In his application Medina set forth two arguments amounting to a claim that justice would be served by terminating the restraining order. Specifically, Medina argued that the restraining order should be terminated (1) to allow him to carry a gun as a volunteer law enforcement officer, and (2) so that he is not barred from construction jobs that require a security clearance. The trial court considered both of these arguments and rejected them. As we will explain, we conclude that the trial court did not abuse its discretion in doing so.

With respect to the volunteer law enforcement position, the trial court stated that "[s]imply because he 'might' volunteer again is not justification to remove the order and allow him to possess firearms." Although Medina claimed in his application that the restraining order should be lifted so that he could carry a gun as a volunteer law enforcement officer, Medina testified that he was planning to move to New Mexico and he was considering volunteer opportunities there at the fire department and the federal forestry station, neither of which required volunteers to carry a gun. Further, even if Medina was considering *eventually* getting involved in the type of volunteer law enforcement that would require him to carry a firearm, it is clear from his testimony that he was not *presently* pursuing any such opportunity. The trial court reasonably could have concluded that because Medina was not currently considering a position that required him to carry a gun, his possible future activities did not justify lifting the restraining order.

Addressing Medina's claim that the restraining order should be terminated to allow him to obtain construction industry jobs that require a security clearance, the trial court found that Medina "has been able to work in his field, despite the order." This finding is supported by substantial evidence. Specifically, Medina presented no evidence that the restraining order impacted his ability to be employed on projects that require a security clearance. In fact, he worked on several military construction projects after the restraining order was issued. Based on this finding, the trial court was well within its

discretion to decide that the restraining order did not need to be terminated in the interest of justice to allow Medina to pursue his profession.

■ We accordingly conclude that the trial court did not abuse its discretion in denying Medina's application to terminate the restraining order. There was no material change in law or fact, and Medina did not establish that the ends of justice required a termination of the restraining order.[12]

### D. *The Trial Court Properly Awarded Attorney Fees and Costs to Loeffler*

Medina also challenges the trial court's award of attorney fees and costs to Loeffler. As a predicate for his argument, Medina assumes that the trial court made the award under section 271, subdivision (a), which authorizes the court in a family law matter to award attorney fees and costs "in the nature of a sanction" when the conduct of a party or attorney "frustrates the policy of the law to promote settlement of litigation." Medina argues that sanctions should not have been awarded because there is no evidence that he or his attorney frustrated the policy of the law to promote settlement of litigation.

■ However, as we interpret the trial court's statement of decision, it did not award fees and costs to Loeffler as a sanction under section 271. Instead, it awarded fees and costs to Loeffler pursuant to section 6344, subdivision (a), which states that in connection with a proceeding concerning a domestic violence restraining order, "[a]fter notice and a hearing, the court may issue an order for the payment of attorney's fees and costs of the prevailing party." (§ 6344, subd. (a).)[13]

---

[12] Medina argues that because some of the trial court's findings are not supported by the evidence, the trial court abused its discretion in denying his application to terminate the restraining order. For example, Medina takes issue with the finding (1) that Loeffler was "awarded the home" in the partition action; (2) that Medina made "threats" about the real property, when there was supposedly only *one* threat; (3) that J.D. Killer found a "blank" check with Loeffler's telephone number on it, when there was no evidence that the check was blank; (4) that the whereabouts of Medina "could not be accounted for" on the date that Loeffler's car was vandalized, when his wife stated that Medina was in Arizona; (5) that "[t]here has been contact since [Medina] moved out of state . . . ," when there was no evidence of Medina being on Loeffler's property since he relocated; and (6) that Medina was "not an active volunteer with the Sheriff for many years before the restraining order became an issue," when the evidence was that he was an active volunteer for more than 20 years. Medina's challenge to these factual findings does not present a basis to reverse the trial court's ruling, as none are material to our analysis of whether Medina satisfied any of the three bases for obtaining termination of an injunction under Code of Civil Procedure section 533.

[13] Loeffler filed two separate requests for attorney fees. Only one of those requests was identified as being a request for the imposition of sanctions under section 271 and, at the conclusion of the testimony, counsel for Loeffler made clear that the trial court had before it both a request for attorney fees and costs and a request for sanctions. In its statement of

Because section 6344, subdivision (a) provides authority for the trial court to award attorney fees and costs to a party who prevails in defeating an application to terminate a domestic violence restraining order—and Loeffler prevailed in defeating Medina's application—we reject Medina's argument that there was no evidentiary basis for the attorney fee and costs award.[14]

Medina also argues that the award of fees and costs to Loeffler "shocks the conscience" because of its amount. In support of his argument, Medina claims that he purportedly spent only $5,000 to litigate the case, while Loeffler spent approximately $50,000.

We apply an abuse of discretion standard in reviewing the amount of an attorney fee award. (*Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542, 549 [25 Cal.Rptr.3d 783] ["We must affirm an award of attorneys fees absent a showing that the trial court clearly abused its discretion."].) "[A]n experienced trial judge is in a much better position than an appellate court to assess the value of the legal services rendered in his or her court, and the amount of a fee awarded by such a judge will therefore not be set aside on appeal absent a showing that it is manifestly excessive in the circumstances." (*Children's Hospital & Medical Center v. Bonta* (2002) 97 Cal.App.4th 740, 782 [118 Cal.Rptr.2d 629] (*Bonta*).) "The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination." (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134 [94 Cal.Rptr.2d 448] (*Akins*).)

Here, Loeffler submitted detailed billing records from her attorney showing how each of the items of fees and costs related to this litigation. Medina does not attempt to establish that any specific item of fees or costs was not reasonably incurred by Loeffler. Accordingly, Medina has not met his burden to establish that the trial court abused its discretion in that the award was "manifestly excessive in the circumstances." (*Bonta, supra*, 97 Cal.App.4th at p. 782.)[15]

---

decision, the trial court expressly stated that it was awarding fees and costs to Loeffler, but it did not state that it was awarding sanctions.

[14] We note that the availability of a fee award under section 6344, subdivision (a) serves to dissuade a restrained party from continuing his or her harassing behavior by filing unwarranted applications to terminate the restraining order.

[15] Further, in determining that the trial court did not abuse its discretion, we find it significant that that the trial court reduced Loeffler's request of $45,842.50 in fees and $2,934.85 in costs almost in half by awarding only $25,000 in fees and $1,504.85 in costs. (See *Akins, supra*, 79 Cal.App.4th at p. 1134 ["The award granted was significantly reduced from the original request . . . . Thus, it clearly appears that the trial court exercised its discretion. In these circumstances, we cannot conclude that the award of attorney fees shocks the conscience or suggests that passion and prejudice had a part in it."].)

## DISPOSITION

The trial court's order is affirmed.

Huffman, Acting P. J., and McIntyre, J., concurred.