Filed 3/9/16  Gordon v. LaPoint  CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DAVID W. GORDON,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KIMBERLY LAPOINT,<br><br>    Defendant and Appellant. | D067701<br><br><br>(Super. Ct. No. DV040568) |

APPEAL from an order of the Superior Court of San Diego County, Ernest M. Gross, Commissioner.  Affirmed.

Kimberly LaPoint, in pro. per., for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Defendant and appellant Kimberly LaPoint appeals a domestic violence restraining order issued on behalf of plaintiff and respondent David Gordon, with whom she was formerly in a dating relationship, and his two minor children.  (Fam. Code, § 6200 et seq.; the Domestic Violence Prevention Act (DVPA); subsequent statutory references are to this code unless noted.)  Representing herself on appeal, LaPoint

essentially argues that because she presented testimony that conflicted with Gordon's testimony, the trial court could properly have found only that the evidence was insufficient to support any such relief. She also seems to argue that a competing application for a similar order against Gordon that she recently filed should have been given more weight, although it was not before the court at the time of this hearing.

Our rules of review applied to this very limited record lead us to determine that the trial court had a sufficient basis to conclude from all of the reported testimony that LaPoint's repeated conduct toward Gordon at the vicinity of his home and workplace amounted to abuse and harassment within the meaning of the DVPA. (§ 6203, subd. (a)(4) [defining domestic violence behavior that may be enjoined under section 6320]; § 6320, subd. (a) [injunctive order, "DVRO," may be issued to prevent "stalking, threatening . . . harassing, telephoning . . . disturbing the peace of the other party, and, in the discretion of the court, on a showing of good cause, of other named family or household members"].) The court did not abuse its discretion in issuing this injunctive order and we affirm.

## I

### *RULES OF REVIEW*

On a petition for a DVRO, a trial court has broad discretion to apply the statutory scheme in determining whether such an order is justified. (See § 6345, subd. (a); *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420 (*Gonzalez*); *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1505 (*Loeffler*).) Abuse of discretion occurs if the trial court exceeds the bounds of reason, or fails to apply correct legal standards and thereby

2

takes action outside the confines of the applicable principles of law, or acts without substantial support in the evidence. (*Gonzalez, supra,* at pp. 420-421.) As a trier of fact, a trial judge is required to reject evidence only " 'when it is inherently improbable or incredible, i.e., " 'unbelievable *per se*,' " physically impossible or " 'wholly unacceptable to reasonable minds.' " [Citations.]' " (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.)

On appeal, we do not reweigh the evidence or second guess the credibility of a witness. (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) In determining whether substantial evidence supports the court's order, we view the evidence in the light most favorable to the order. (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151.)

As an appellant, LaPoint has the burden of providing an adequate record and of showing that error occurred and that it was prejudicial. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296; *Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132.) The arguments on appeal must be restricted to documents in the record, and we generally may not consider references to matters outside the record. (Cal. Rules of Court, rule 8.204(a)(2)(C) [appellant's opening brief must provide a summary of significant facts limited to matters in the record on appeal].) Absent an adequate record to demonstrate error, a reviewing court presumes the judgment or order is supported by the evidence. (*In re Angel L.* (2008) 159 Cal.App.4th 1127, 1136-1137.)

Further, "[i]n propria persona litigants are entitled to the same, but no greater, rights than represented litigants and are presumed to know the [procedural and court]

3

rules."  (*Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795.)  For any appellant, "[a]ppellate briefs must provide argument and legal authority for the positions taken. 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' "  (*Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862; *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830.)

II

*EXTENT OF RECORD*

The record contains a copy of the February 23, 2015 DVRO, issued after a hearing, for a period of five years.  It identifies LaPoint as Gordon's ex-girlfriend, but there is no copy of Gordon's petition.  No copy of any competing application for a temporary restraining order (TRO) by LaPoint has been provided, although her brief refers to one and it was discussed in the reporter's transcript.  Apparently, her first such application was dismissed by the trial court because she could not provide a police report, but a TRO was granted later, with a hearing date assigned a few weeks after the current trial was concluded.  Although the record is sketchy and the briefing is confusing, we exercise our discretion to determine whether the DVRO has the required evidentiary and legal support.

According to testimony at the hearing, Gordon and LaPoint began a romantic relationship in 2000, while both were living on the East Coast.  Eventually, Gordon, his wife Hazel and their children moved to San Diego.  Gordon and LaPoint kept up their dating relationship, e-mailing frequently.  In February 2014, LaPoint moved to San

4

Diego, although Gordon had told her not to try to join him. At that time, she learned he was still married and was not planning to leave Hazel. He nevertheless helped LaPoint and her children off and on, and the relationship continued. Gordon worked in security at the La Jolla Veterans Administration (VA) hospital, and LaPoint started to volunteer there. They often had lunch and otherwise interacted there and elsewhere through the summer and fall of 2014.

Gordon acknowledged at the hearing that he did not seriously try to put the relationship to an end until around November 2014, when he stopped communicating with LaPoint. He continued to interact with her on a professional level, thanking her for the birthday cake she dropped off at his office, and helping her with a car problem in December 2014. He then told her again they were done, but LaPoint did not accept that, as she noticed he was still wearing a watch that she gave him. He learned that she had sent information about their relationship to the administrative head of the hospital and to the head of the Navy Police Department, where he worked, claiming she was afraid of him and trying to get his firearms privileges revoked. He became concerned that his job and Hazel's job might be affected, as she was also working at the VA. In court, he played some of the daily taunting voice mails that LaPoint had left on the family telephone in December, after he asked her not to call him.

Gordon testified at the hearing that LaPoint moved into his neighborhood around December 2014 and often drove by his house, honking her car horn to make herself known to his family. He showed the court photographs of chalk writings he found in January 2015 on his driveway, which said she had moved 3,000 miles to join him. He

5

had previously found another message on his driveway with her birthday in it, and he said LaPoint wrote them both. A few days after the January message, his sister visited and sent Facebook messages to LaPoint, telling her to leave Gordon alone. On January 13, 2015, LaPoint drove by Gordon's house when the sister was there, and somebody encouraged one of his kids to throw an egg at LaPoint's car. When Hazel arrived home about the same time, she started screaming at LaPoint through the car window. LaPoint backed up, hit a neighbor's car nearby, and drove off. At the hearing, Gordon played a cell phone video of the incident.

In LaPoint's testimony, she admitted to calling Gordon's business and home numbers within the last few months, including talking to Hazel, because she was hurt and frustrated. LaPoint broke off the relationship with Gordon by sending a text to his sister on January 11, 2015, saying to leave her alone, and she thought that would notify Gordon as well. Two days later, she was taking her children to a restaurant in the neighborhood, but when she heard something hit her car, she backed up so she could tell Gordon his children were misbehaving. She then drove off because she and her children were upset and the sister was banging on her car door. LaPoint's friend told her to call 911, and San Diego police officers responded and told her she should not have left the scene of an accident. They admonished Gordon's son not to throw things at cars.

After the incident at Gordon's home, LaPoint filed a petition for a temporary restraining order and got one on her second try, when she obtained a police report from the car incident. She met with the head of the VA on January 30, 2015, trying to ensure she would have a safe working environment as a volunteer. LaPoint denied writing the

6

chalk messages on Gordon's driveway.  Her fellow volunteer, Ms. Adams, testified at the hearing that LaPoint and Gordon continued to get together in a friendly way through the end of 2014.

In summarizing the evidence, the court acknowledged that Gordon and LaPoint both had equal parts in what was going on until late 2014.  In late December or early January 2015, LaPoint took it to another level, by directly going at him and his family and moving into the abuse definition of domestic violence.  The court was concerned that LaPoint had inappropriately moved into his neighborhood and volunteered at his workplace to put herself in close proximity to him.  The court noted that when someone threw something at LaPoint's car, she did not have to go back to confront people further, but she chose to do so, was inviting this trouble, and apparently could not help herself.

The court issued the restraining order for a five-year period because it concluded only an order would convince LaPoint to stay away from Gordon and his children.  The court noted that Hazel would not be included in the order, because as an adult, she could seek her own order if necessary.  LaPoint was not restricted from continuing to volunteer at the VA, as long as she stayed away from Gordon individually.  LaPoint inquired whether she should attend her scheduled hearing on her own restraining order request, and the court responded that that was up to her whether to pursue it or not.

LaPoint filed a timely notice of appeal from the trial court's order.

*ANALYSIS*

LaPoint contends that Gordon failed to carry his burden to show by a preponderance of the evidence that her conduct amounted to abuse within the meaning of the DVPA statutory scheme. She argues that Gordon was inconsistent in his evidence and not worthy of belief, or he in fact committed perjury. (Pen. Code, § 118 [perjury defined].) She also contends that her conduct was in some way privileged or justifiable within the applicable definition of a dating relationship. (§ 6210 ["frequent, intimate associations primarily characterized by the expectation of affection or sexual involvement independent of financial considerations"].)

Under section 6320, subdivision (a), " 'disturbing the peace of the other party' " may constitute abuse for purposes of the DVPA. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1495-1497.) The statutory definition of conduct that may justify the issuance of a restraining order under section 6320, subdivision (a) includes "stalking, threatening . . . harassing, telephoning." The evidence, including admissions by LaPoint, showed that toward the end of 2014 and the beginning of 2015, she engaged in several types of such conduct, including contacting Gordon's work supervisors to make allegations that she could not show were justified, about being afraid of him. She repeatedly telephoned his home in a taunting way, and admitted that it was wrongful of her to contact his wife with her complaints. Her explanation for why she repeatedly drove by Gordon's house was evidently not accepted by the trial court. It is not for us to

reweigh the evidence on appeal or reevaluate witness credibility. (*In re Marriage of Balcof*, *supra*, 141 Cal.App.4th 1509, 1531.)

Although the evidence also showed that LaPoint had obtained her own temporary restraining order against Gordon, the court at the hearing explained to her that that proceeding was a separate matter and the upcoming court date in it could be pursued or not, as she chose. To the extent that LaPoint seems to argue that the trial court abused its discretion in failing to grant her own application for a restraining order against Gordon, the record does not support any claim that that matter was properly brought before the court at the time. Since the record does not include any information about any other related civil proceedings, she does not support her position by citing to Civil Code sections providing a tort remedy for stalking or harassment. (Civ. Code, §§ 1708.6 [remedies available in civil action for tort of domestic violence]; 1708.7 [damages remedy for tort of stalking].)

LaPoint also seeks to show that Gordon's application had no merit when compared to other trial court cases, but her citations to such other lower court cases do not provide any proper legal authority for such an argument. (See *Nelson v. Avondale Homeowners Assn., supra,* 172 Cal.App.4th 857, 862.) From the reporter's transcript, it is evident that the commissioner who heard the case examined the merits of the petition and LaPoint's opposition, and conscientiously gave her a chance to be heard. In response to questioning by the court, Gordon admitted that he allowed the relationship to continue through the summer and fall of 2014, but then tried to stop it. LaPoint admitted that after the beginning of 2014, she was aware that he was not leaving his wife and he said he wanted

9

to end the relationship. However, through January 11, 2015, she continued to contact his home, relatives, and supervisors at his business, and two days later, she drove by his house and engaged in confrontations. She could not provide any showing of justification for her actions and was inconsistent in her explanations of what happened and why.

"A grant or denial of injunctive relief is generally reviewed for abuse of discretion. [Citation.] This standard applies to a grant or denial of a protective order under the DVPA." (*Gonzalez, supra*, 156 Cal.App.4th at p. 420.) " 'The scope of discretion always resides in the particular law being applied by the court, i.e., in the " 'legal principles governing the subject of [the] action. . . .' " ' " (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264-1265.) The record supports a conclusion that during a period of at least several months, LaPoint carried out several types of actions evidently aimed at disturbing the peace of Gordon and his family. (*In re Marriage of Nadkarni*, *supra*, 173 Cal.App.4th 1483, 1495-1497.) She distributed information about their affair, which Gordon plainly did not want to share with his supervisors and family, and her conduct was evidently designed to taunt and cause him emotional distress. The court could reasonably have concluded that this conduct seemed to be escalating and would cause a reasonable person substantial emotional distress, and it did.

Moreover, a five-year term of the order, applicable to Gordon and his children, was appropriate in light of the length of the relationship as a whole, and the court explained why there was no good cause to extend the order to Hazel, who could seek her own order if the evidence supported it. (§ 6320, subd. (a) [DVRO applicable to other household members may be issued on a showing of good cause].) Absent any indication

10

to the contrary, which there is not, we are required to presume the trial court applied the correct legal standards in making its discretionary determinations. (*In re Angel L., supra*, 159 Cal.App.4th at pp. 1136-1137; *Gonzales, supra*, 156 Cal.App.4th at pp. 420-421.) The record supports the issuance of this injunctive relief.

## DISPOSITION

The order is affirmed. Each party to bear his or her own costs.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


O'ROURKE, J.

11