Filed 4/15/16  Galvan v. Galvan CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| KALIA GALVAN,<br><br>        Appellant,<br><br>    v.<br><br>RAYMOND C. GALVAN,<br><br>        Respondent. | D067180<br><br><br><br>(Super. Ct. No. DV035555)<br><br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 24, 2016, be modified as follows:

1.  The following language is inserted as footnote 3 at the end of the first full paragraph on page eight of the opinion:  "The facts of this case are distinguishable from those in *Loeffler*, *supra*, 174 Cal.App.4th at pages 1506 to 1508.  In *Loeffler*, the appellate court concluded the trial court did not abuse its discretion in denying a motion to entirely dissolve a domestic violence restraining order based on the fact the restrained

party moved out of state and remarried. The restrained party had not met his burden of establishing a material change in facts upon which the restraining order was granted. The restrained party continued to have contact with family members and friends who lived close to the protected party. The court noted the parties parted with hostility and resentment and the change in circumstances did not negate the protected party's reasonable fear of having contact with the restrained party. Here, Raymond met his burden of establishing a material change in his economic circumstances. The trial court modified the restraining order to allow for this factual change but imposed practical safeguards for the protection of the protected parties."

2. The first sentence of the second full paragraph on page eight of the opinion is modified to read as follows: "The court implicitly considered Kalia's claim of ongoing fear of her father when it weighed the competing interests of the parties. The court stated the issue was 'to what extent you can really restrict someone's freedom of movement and freedom to work and so forth, which are legitimate concerns.' "

There is no change in the judgment.

Appellant's petition for rehearing is denied.


McCONNELL, P. J.

Copies to: All parties

2

Filed 3/24/16  Galvan v. Galvan CA4/1 (unmodified version)

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| KALIA GALVAN,<br><br>Appellant,<br><br>v.<br><br>RAYMOND C. GALVAN,<br><br>Respondent. | D067180<br><br><br><br>(Super. Ct. No. DV035555) |

APPEAL from an order of the Superior Court of San Diego County, Pamela M. Parker, Judge.  Affirmed.

SDFJC Foundation Legal Center, Alexia Peters and David Q. Meyer for Appellant.

No appearance for Respondent.

INTRODUCTION

Kalia Galvan appeals an order modifying a restraining order she obtained against her father, Raymond C. Galvan in August 2012. Kalia[1] contends the family court abused its discretion in modifying the restraining order because it applied the wrong legal standard. We disagree and conclude the family court acted within its discretion to modify the restraining order pursuant to Code of Civil Procedure section 533.[2] We, therefore, affirm the order amending the restraining order.

FACTUAL AND PROCEDURAL BACKGROUND

A

By way of background, Kalia filed a request for a domestic violence restraining order against Raymond in August 2012 to protect herself, her brother (then age 15), and her mother. In support of her request, she submitted a declaration stating there had been two restraining orders issued against Raymond following instances of domestic violence against her brother and her. A one-year restraining order was issued in 2005 after Raymond attacked Kalia's brother and she tried to defend him. A three-year restraining order was issued in 2008 after an incident in which Raymond threw Kalia's brother across a garage and then grabbed Kalia by the neck and lifted her up against a wall until Kalia's mother slammed into Raymond.

---

[1]  Because the parties share a surname, we refer to them by their first names for clarity. No disrespect is intended.

[2]  Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Kalia was surprised and became scared when she saw Raymond driving down her street in July 2012. She made a U-turn and followed him to a parking lot where they talked for over two hours. When she asked why he was there, he told her he was making sure they were doing well and he was "checking up" on them. Raymond told her "[t]hey were his kids and that there was no hiding from him." He said he knew the hotel where she, her mother, and her brother stayed when they were hiding in 2005. He said he watched them move into their current home in 2008. He said he rented a car and parked in front of their house. He also watched them from the park across the street from their house. During the meeting, Raymond inquired about their dogs. Kalia stated this made her feel that Raymond would not leave them alone. She stated she was scared for her safety as well as for the safety of her brother and mother.

Raymond filed a response stating no restraining order was in effect when he met with Kalia in July 2012. He admitted he wanted to reconnect with his children. However, he denied having any contact with his children or their mother for over five years and denied stalking or harassing them. He submitted evidence of an exchange of social media messages between Kalia and Raymond's girlfriend about the possibility of reconnecting with Raymond.

The family court issued a five-year restraining order on August 27, 2012, ordering Raymond to stay more than 100 yards away from Kalia, her brother and their mother as well as from Kalia's home, the work locations for Kalia and her mother, and the park across the street from their home.

3

B

Two years later, in August 2014 Raymond filed a request for modification of the restraining order requesting a court order to allow him to make certain deliveries to remain employed. He was employed by Bimbo Bakeries for 16 years and obtained a new route in March 2014. He was making a delivery to a store on his route when his ex-wife came into the bread aisle of the store and started yelling at him to leave. The police were called and Kalia arrived with a copy of the restraining order. Raymond stated he needed "the court to verify that I have a right to work without any of them coming into the store after seeing my truck parked there causing me trouble with my employers."

Kalia opposed the motion contending there was no basis under section 533 to modify the restraining order because there was no material change in facts to justify modification and a modification was not necessary to serve the ends of justice. She argued Raymond intentionally bid on the new route to be near her and her family.

At the hearing, Raymond testified the route became available six months earlier and it was a good opportunity because the route offered a higher commission than either the route he was driving before or other routes available at the same time. Raymond stated he did not drive past their home after he started the new route. Instead, he turned two blocks away from the home and went through a residential neighborhood to make his delivery at the nearby store. He explained he works every day from 5:30 a.m. until 1:30 p.m. except Wednesdays and Sundays. The difference in pay was approximately $150 per week. There were eight or 10 routes that offered similar commission, but those routes were not available at the time.

4

Raymond admitted he missed his children and wanted to rekindle a relationship with them in 2012 before the latest restraining order issued. He did drive by their house after the expiration of the prior restraining order in the hopes of seeing them. When he saw Kalia, he waved at her. She followed him, approached his truck, and they spoke for two and a half hours, which he thought was nice. He stated he was surprised to receive the restraining order a few weeks later.

Kalia testified she talked to Raymond in 2012 because she wanted to know why he was in the area. She stated he made disturbing remarks during their conversation about watching them in the past from parked vehicles and attempting to go to her places of work. She stated Raymond abused her and her brother since they were children and they had multiple restraining orders against him. She had mixed emotions during the conversation, but the more she thought about what he knew about her life the more unsafe she felt. When asked if there had been any incidents since Raymond took the new route, Kalia stated she had seen him once or twice on the road before the incident where her mother saw him in the store.

After considering the evidence and arguments of counsel, the court issued a ruling requiring Raymond to provide the protected parties with updated information regarding his delivery route details including the dates and times of his delivery schedule. The court advised the protected parties not to intentionally go to those places during his delivery schedule and, if they found themselves in the same parking lot, to "walk away from each other, if it is possible." The court encouraged all parties "to use their common sense."

5

The attachment to the amended restraining order stated, "It is NOT a violation of the Restraining Order to have a truck route that is in the same neighborhood as the Protected Parties.  [¶] [Raymond] shall keep his route updated at all times.  (Current schedule attached hereto) [¶] Protected Parties will not shop at the listed stores during his work schedule.  [¶] ALL PARTIES will use common sense when they are inadvertently at the same public place.  The last to arrive should leave.  [¶] [Raymond] shall not drive down or park on the Protected Parties['] Street."

DISCUSSION

I

As with an order granting or denying injunctive relief, we review an order granting a motion to amend a restraining order under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.) for abuse of discretion.  (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264; *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1504-1505 (*Loeffler*).)  " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.)  "To the extent that we are called upon to review the trial court's factual findings, we apply a substantial evidence standard of review." (*Loeffler*, *supra*, at p. 1505.)

II

Section 533 provides, "the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the

6

facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order." Since a restrained party seeking to modify or dissolve a domestic violence restraining order is essentially seeking to modify or dissolve an injunction, "the burden is on the restrained party to show by a preponderance of the evidence that one of the circumstances set forth in [section 533] is present and justifies a [modification or] termination of the restraining order." (*Loeffler*, *supra*, 174 Cal.App.4th at p. 1504.)

Kalia contends the order amending the restraining order must be reversed because the family court did not apply the legal standards required by section 533 in determining whether to grant Raymond's request for modification of the restraining order. We do not agree the court applied the wrong legal standard. However, even if we were to assume the court did not apply the appropriate standard because it did not expressly identify section 533, " '[w]e do not review the trial court's reasoning, but rather its ruling. A trial court's order is affirmed if correct on any theory, even if the trail court's reasoning was not correct.' [Citation.] Moreover, to the extent the trial court erred in applying the wrong standard, that error is harmless because …, [based on implied findings,] we are able to apply to the standard set forth in [section 533] to determine that, had the trial court applied the correct standard, it would have reached the same result." (*Loeffler*, *supra*, 174 Cal.App.4th at p. 1504, fn. 11.) As a general rule, " 'we must review the trial court's

7

exercise of discretion based on implied findings that are supported by substantial evidence.' " (*Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1148-1149.)

In this case, Raymond requested an order clarifying or modifying the restraining order to allow him to be in a public place and to do his job "without having to leave just because they [choose] to walk through the door." The court examined Raymond about when and why he decided to change routes to this particular route as well as the dates and times he makes his deliveries. Raymond testified this route became available recently and offered a higher commission than his previous route. He stated other routes offering similar commissions were not available at the time. Kalia offered no evidence to dispute this evidence and admitted there was no way to prove he changed routes to be near the protected parties as opposed to making a legitimate economic choice. Therefore, there is substantial evidence to support the court's exercise of discretion to modify the restraining order based upon an implied finding of changed factual circumstances.

The court also considered and weighed the competing interests of the parties stating the issue was "to what extent can you really restrict someone's freedom of movement and freedom to work and so forth, which are legitimate concerns." The court stated, "protective orders are two-way streets. … Both parties have to take actions to protect themselves." The court observed an order requiring Raymond to disclose where he would be during certain hours allowed him to do his work while not endangering the protected parties. The protected parties would know not to do their shopping during those hours or to send a nonprotected party, if necessary. The court also noted a protected party who inadvertently sees Raymond loading shelves while performing his

8

job should use common sense and stay away from him. "Don't make contact and say you're here. You shouldn't be here. That's an explosive situation. That's inviting a problem. Just turn around and walk out." The court asked Raymond to confirm he did not drive past the protected parties' home on his new route and his schedule did not allow him to stop near their house for periods of time.

In making its ruling, the court stated, "[t]he purpose of the restraining order is not to prevent [Raymond] from earning a living … . [¶] The purpose is to keep yourself safe. … All parties have an obligation to do that. [¶] … For the sake of keeping the peace here, I think it's important to clarify the orders of the court." The court's amendment to the restraining order clarifies it is not a violation of the restraining order for Raymond to have a route that takes him into the protected parties neighborhood, but requires him to provide to the protected parties with information regarding where and when he will be making deliveries. It advises the protected parties to avoid those stores during those time frames. It prohibits Raymond from driving down or parking on the protected parties' street. It advises all parties to use common sense if they encounter one another in a public space. The record as a whole supports an implied finding the court considered modification of the restraining order was necessary to serve the ends of justice. The trial court did not abuse its discretion in modifying the restraining order.

DISPOSITION

The order amending the August 27, 2012, restraining order is affirmed.


McCONNELL, P. J.

WE CONCUR:


McDONALD, J.


PRAGER, J.[*]

---

[*]     Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10