Filed 6/29/20

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>[*]

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| BAILEY YOST,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANTHONY FORESTIERE,<br><br>    Defendant and Appellant. | F078580<br><br>(Super. Ct. No. 15CECG00315)<br><br><br>**OPINION** |

APPEAL from an order of the Superior Court of Fresno County.  Monica R. Diaz, Judge.

Glenn R. Wilson for Defendant and Appellant.

No appearance for Respondent.

-ooOoo-

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I. of the Discussion.

This appeal raises legal questions about the scope of a trial court's authority in deciding a request to modify a civil harassment restraining order. Subdivision (j)(1) of Code of Civil Procedure section 527.6[1] provides that civil harassment restraining orders are subject to modification or termination on the motion of a party, but does not specify the grounds for modification.

In the published portion of this opinion, we address and resolve several legal questions involving section 527.6, subdivision (j)(1) that have not been explicitly decided in a published decision. First, the determination whether to modify or terminate a civil harassment restraining order is committed to "the discretion of the court." (§ 527.6, subd. (j)(1).) Second, the trial court's discretionary authority to modify or terminate a civil harassment restraining order includes, *but is not limited to*, the three grounds for modifying ordinary injunctions set forth in section 533. Third, a trial court has the discretion to modify a restraining order when, after considering the relevant evidence presented, it determines there is no reasonable probability of future harassment. This discretion extends to modifying a specific term in a restraining order that deals with a particular threat of future harm when that threat no longer exists. Thus, the court may eliminate or relax one restriction in the restraining order while leaving the remaining restrictions in place. Fourth, the restrained party seeking modification on the ground that there is no longer a reasonable probability of a future harm has the burden of proving this ground by a preponderance of the evidence.

In this case, defendant Anthony Forestiere (Grandfather) was subject to a 2015 restraining order requiring him to have no contact with his granddaughter or the girl's mother and to stay 100 yards away from them. The stay-away order included the girl because of the risk Grandfather and the grandmother would abduct the girl from her mother. Grandfather requested a modification of the stay-away order only as it relates to

---

[1]     All unlabeled statutory references are to the Code of Civil Procedure.

2.

his granddaughter so that he could attend family functions attended by the granddaughter in the company of her father (Grandfather's son). Grandfather argued the bitter custody battle between his son and the girl's mother had been resolved with his son obtaining 50 percent custody and this change in the custody arrangement justifies a modification of the stay-away order. In short, Grandfather implies his son's equal custody of the child effectively eliminates the threat Grandfather and the grandmother would abduct the child.

The trial court denied Grandfather's modification request based on its determination that the custody orders for the child were not relevant to whether a modification was appropriate. As described below, we conclude the court interpreted the scope of its statutory discretion too narrowly. As a result, its order denying the modification request was " 'not an exercise of informed discretion and is subject to reversal.' " (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 90 (*Cooper*).)

We therefore reverse the order denying Grandfather's request to modify.[2]

## FACTS AND PROCEEDINGS

In May 2014, a daughter was born to respondent Bailey Yost (Mother) and Joseph Forestiere. Grandfather is the father of Joseph and the girl's paternal grandfather. Mother and child stayed at Grandfather's house for a short time after she was born. The parties disagree about Mother's reason for moving from the residence and taking her infant daughter with her. In August 2014, after the move, Joseph filed a paternal rights petition against Mother in Fresno County Superior Court, which was assigned case No. 14CEFL04400. In January 2015, the family court entered an order allowing Joseph unsupervised visitation with the child.

---

[2]    In the unpublished portion of the opinion, we conclude the appeal is not moot even though the restraining order has expired because there is a motion for attorney fees pending in the trial court. The outcome of this appeal is relevant to the trial court's discretionary determination of who, if anyone, was the prevailing party for purposes of an attorney fees award under section 527.6, subdivision (s).

*Initial Restraining Order*

On January 29, 2015, Mother filed requests for civil harassment restraining order against Joseph's parents and named the child as an additional protected person. Mother asserted that the grandmother had threatened to flee with the child, and she feared the grandparents would abduct the child. The trial court issued a temporary restraining order and set the matter for a hearing. In February 2015, while the temporary restraining order was in place, the family court issued a new custody and visitation order restricting Joseph to supervised visits with his daughter and directing Grandfather to have no contact with the girl. Grandfather contends the family court's no-contact directive simply acknowledged the restriction in the temporary restraining order and was not a finding that contact would be contrary to the child's best interests.

On March 16, 2015, the trial court held a hearing on Mother's request for a restraining order against Grandfather. Both parties were present at the hearing and were represented by counsel. On March 18, 2015, the court issued a civil harassment restraining order after hearing on Judicial Council form CH-130. The personal conduct order prohibited Grandfather from contacting Mother or the child. The stay-away order required Grandfather to keep at least 100 yards away from them. The court set March 18, 2020, as the order's expiration date.

Later that March, Grandfather filed a motion for reconsideration. He argued circumstances had changed because the couple who were to supervise Joseph's visit with his daughter were no longer willing to act as supervisors, which effectively eliminated Joseph's ability to see the child prior to a hearing set for April 27, 2015. Mother opposed the motion. In May 2015, the trial court denied Grandfather's motion for reconsideration and directed him to pay attorney's fees in the amount of $500 within 10 days.

*Request to Modify*

Approximately three years later, in February 2018, Grandfather filed a request to modify civil harassment restraining order on mandatory Judicial Council form CH-600

(new Jan. 1, 2018). Grandfather asked to have his granddaughter removed as a party protected by the restraining order or, alternatively, to be allowed contact with the child when supervised by Joseph. Grandfather based the request on the graduated custody plan implemented by the family court, which gave Joseph slightly less than 30 percent custody at the time of the request and increased Joseph's custody to 50 percent on June 1, 2018. Grandfather argued the terms of the restraining order had created an increasing and unnecessary hardship on the entire family because Joseph was forced to choose between having his parents or his daughter present at family functions.

The hearing on Grandfather's modification request, initially scheduled in March 2018, was continued at the request of the parties. After subsequent continuances and the filing of motions in limine, the request to modify the restraining order was heard on October 25, 2018.

During the hearing, the trial court confirmed with counsel that Grandfather was seeking only to modify the stay-away order covering the child and was not seeking any change in the restrictions relating to Mother. The court then stated that what it had "read in the moving papers seem irrelevant to this hearing quite frankly. I am doing my best not to rehear the original proceeding," which had been decided by another judge. Counsel for Mother argued the modification request was really asking the court to relook and reconsider the original judge's order, which was entered after a lengthy hearing where both parties were represented by counsel. Counsel for Mother argued that visitation was clear at the time of the hearing on the original restraining order and nothing in the order said that if Joseph got more visitation the court would consider a modification.

Counsel for Grandfather asserted that when the original restraining order was issued, Joseph did not have joint legal and physical custody of the child and those circumstances had changed because Joseph "now has equal custody, equal footing with [Mother] in the ability to make decisions regarding the child's best interests." Counsel

argued that "because dad has equal footing, something that didn't exist at the time, and the child is with dad an equal amount of time, that is a substantial change in circumstances over what was occurring at the time the order was issued and what the judge had before it at that time." Counsel emphasized the narrowness of the request by stating Grandfather was not seeking visitation, only that the grandparents be allowed to "be in the same spot without it creating a violation of the order. That's it."

The court asked how had "what's occurred in the family law case with respect to the father have any impact on the Court's decision in this case? I just don't see it." The court stated, "I just don't see how that impacts this case or how it can because it was never part of these orders. It's nowhere in this file … and I think you're asking me to do something that I can't do."

Counsel for Grandfather responded by arguing that subdivision (j)(1) of section 527.6 specifies that modifications are in the discretion of the court and nothing in that subdivision says a motion to modify must be based on a substantial change in circumstances. Counsel noted that section 533, which is a general provision addressing the modification or dissolution of an injunction or temporary restraining order, includes material change as a basis for modification, but the Legislature did not include an equivalent requirement in section 527.6, subdivision (j)(1). Thus, counsel argued that a material change in circumstance was not required and a modification could be granted in the court's discretion if the court believed a modification was appropriate. Alternatively, counsel argued that the facts presented showed a change in circumstances from what was happening at the time the original restraining order was issued.

Another issue addressed at the hearing was how the restraining order fit with the custody and visitation orders entered in the family court proceeding. Counsel for the Grandfather argued the question of allowing the grandparents to be near the child had not been addressed in the family law proceeding and, moreover, the question could not have been addressed there because the restraining order was in place. In response, the court

6.

stated: "I think the family court can take this matter, this case and do whatever it wants with it. In fact, this court often defers to the family law court, especially in issues like this."

Counsel for Mother then argued that the grandparents could not prevail on a request for grandparent visitation under Family Code section 3104 because they could not show a bond had developed and the modification request was, in effect, a request for visitation supervised by the father. The trial court agreed with this argument, stating that "even if [Grandfather] were to prevail in this, the only thing I could see I could do here is terminate the order if I thought that it was appropriate. I don't see how I can modify it to allow for supervised visits to include the father." Counsel for Grandfather stated: "Again, we're not requesting supervised visits." Counsel summarized Grandfather's position by stating: "But very simply put, if the Court would make the order that it's not a violation for [the grandparents] to be in the same place as the child now that their son has 50 percent custody of this child, that sufficient for us." Counsel for Mother stated:

> "Your Honor, the restriction [on the grandparents] with regard to the child was not based [on] anything to do with the father's visitation. It had to do with other allegations that were in the case at the time. We would be completely opposed to having that lifted for them to have any type of contact with the child. That would have to be dealt with in family court. But those were already litigated issues."

After the trial court agreed with the characterization of the modification request as a request for visitation, counsel for Grandfather withdrew the request for supervised visits and just requested a modification stating the grandparents would be able to be in the same place as the child. The court stated the request for modification was "based upon the fact that the father now has 50 percent custody, but that is a non issue in this case." Explaining its rationale, the court stated "that under the grounds that you are requesting, they are inappropriate.… I'm saying you have to have a proper basis, Counsel, and I'm saying that you don't have one. So it is not the Court's refusal to do something, it's a

lack of a basis to do it." The court stated it was aware that the case involved allegations of threats to kidnap the child and assumed the allegations were truthful because the judge who issued the restraining order decided "to issue the order for a period of not three, but five years. So I am going to assume those facts are true." Thus, the court impliedly determined the probability of the grandparents kidnapping the child sometime in the future was not related to, or affected by, the custody granted to Joseph by the family court. The trial court rejected Joseph's increased custody and its impact on the Grandfather's ability to attend family functions attended by the father and child as a basis for modifying the terms of the restraining order, stating "I don't believe that those [circumstances] are relevant to this hearing." Accordingly, the court denied all aspects of Grandfather's modification request.

The law and motion minute order from the hearing stated: "The court finds defense has not provided sufficient basis for re-consideration." The court established a briefing schedule on Mother's attorney fees request and set a hearing on January 9, 2019. In December 2018, Grandfather filed a timely notice of appeal.

*Subsequent Events*

In January 2019, before Mother's motion for attorney fees was heard, Grandfather filed an ex parte request to stay the proceeding. The minute order from the hearing stated the "Stay of Proceedings until Appeal is resolved is Granted." It also stated the motion for attorney fees was taken off calendar. As a result, Mother's motion for attorney fees is still pending in the trial court.

A year later, in January 2020, Mother filed a request to renew the restraining order. Grandfather filed a response stating he did not agree to extend the order. At the March 13, 2020 hearing on Mother's renewal request, the trial court met with counsel in chambers off the record. After the meeting, Mother's counsel stated on the record that the application to renew the restraining order was withdrawn. The law and motion

8.

minute order from the hearing also noted: "Permanent restraining order to expire 03/18/2020."

## DISCUSSION

I.  MOOTNESS*

    A.    <u>General Principles</u>

An issue must be justiciable before a court will decide it. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.) Justiciability means the questions litigated are based on an actual controversy. (*Ibid.*) Unripeness and mootness describe situations where there is no justiciable controversy. (*Ibid.*) A case becomes moot when an actual controversy that once was ripe no longer exists due to a change in circumstances. (*Ibid.*)

The general test for mootness states "[a]n appeal is moot if the appellate court cannot grant practical, effective relief." (*Citizens for the Restoration of L Street v. City of Fresno* (2014) 229 Cal.App.4th 340, 362.) " 'If relief granted by the trial court is temporal, and if the relief granted expires before an appeal can be heard, then an appeal by the adverse party is moot.' " (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1079 [injunction against operation of medical marijuana dispensaries terminated when citywide moratorium prohibiting operation of dispensaries expired; appeal challenging the injunction was moot]; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2019) ¶ 5:25.1, pp. 5-7 to 5-8.)

    B.    <u>Effect of Pending Motion for Attorney Fees</u>

The original restraining order expired on March 18, 2020. Furthermore, the restraining order was not renewed. (Cf. *Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 495 [appeal was not moot because restraining order was renewed prior to its expiration] (*Harris*).) Because the restraining order is no longer operative, this court is not able to

---

\*    See footnote, *ante,* page 1.

9.

grant effective relief *as to the terms contained in the restraining order*. Consequently, our evaluation of mootness considers whether there are other aspects of the litigation that would be affected by the resolution of this appeal.

The litigation has not been completed because Mother's motion for attorney fees is still pending in the trial court. The trial court's discretionary determination of whether Mother was a prevailing party and thus eligible for attorney fees under section 527.6, subdivision (s) will be affected by our determination of the merits of this appeal. Therefore, Grandfather's appeal of the denial of his modification request is not moot. (*Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 365 [appellate review of declaratory relief provided would determine propriety of fee award and, thus, issues were not moot]; see *Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 880–881; *Save Our Residential Environment v. City of West Hollywood* (1992) 9 Cal.App.4th 1745, 1750–1751.) Consequently, we reach the merits of this appeal.[3]

II.     MOTIONS TO MODIFY RESTRAINING ORDERS

     A.     <u>Overview of Civil Harassment Restraining Orders</u>

Section 527.6, subdivision (a)(1) provides that a victim of "harassment … may seek a temporary restraining order and an order after hearing prohibiting the harassment as provided in this section." When the Legislature enacted section 527.6, it expressly stated the statute was intended "to protect the individual's right to pursue safety,

---

**3**     This opinion should not be construed as expressing any views on the merits of Mother's motion for attorney fees. We simply note that our reversal of the order denying Grandfather's modification request does not necessarily preclude Mother from qualifying as the prevailing party and case law establishes the "determination of the prevailing party lies in the trial court's sound discretion." (*Elster v. Friedman* (1989) 211 Cal.App.3d 1439, 1443.)

happiness and privacy as guaranteed by the California Constitution." (Stats. 1978, ch. 1307, § 1, p. 4294.)[4]

The legislative history for section 527.6 states that, under prior law, " 'a victim of harassment [could] bring a tort action based either on invasion of privacy or on intentional infliction of emotional distress. Where great or irreparable injury [was] threatened, such victim [could] obtain an injunction under procedures detailed in [section] 527(a).' " (*Smith v. Silvey* (1983) 149 Cal.App.3d 400, 405.) In comparison, section 527.6 " 'would establish an expedited procedure for enjoining acts of "harassment," as defined, including the use of temporary restraining orders. [Section 527.6] would make it a misdemeanor to violate the injunction and … provide[s] for the transmittal of information on the TRO or injunction to law enforcement agencies. [¶] The purpose of the [statute] is to provide quick relief to harassed persons.' " (*Smith, supra*, at p. 405.)

The quick, injunctive relief provided by section 527.6 "lies only to prevent threatened injury"—that is, future wrongs. (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332 (*Scripps Health*).) The injunctive relief is not intended to punish the restrained party for past acts of harassment. (*Ibid.*; see *Russell v. Douvan* (2003) 112 Cal.App.4th 399, 403.)

To provide quick relief, "[a] request for the issuance of a temporary restraining order without notice under this section shall be granted or denied on the same day that the petition is submitted to the court." (§ 527.6, subd. (e).) If a request is submitted too late in the day for effective review, the temporary restraining order must be granted or denied the next business day. (*Ibid.*) Subject to the provisions governing continuances, a

---

[4]     "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Cal. Const., art. I, § 1.)

hearing on the petition shall be held "[w]ithin 21 days, or, if good cause appears to the court, 25 days from the date that a petition for a temporary order is granted or denied." (§ 527.6, subd. (g); see § 527.6, subds. (*o*), (p) [continuances].)

Compared to the normal injunctive procedures set forth in the Code of Civil Procedure, section 527.6 provides a quick, simple and truncated procedure. (*Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 811 (*Byers*).) The statute provides for the proceeding to be completed in a matter of weeks and was drafted with the expectation that victims often would seek relief without the benefit of a lawyer. (*Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 970.)

To assist persons proceeding without a lawyer, the Legislature directed the Judicial Council to "develop forms, instructions, and rules relating to matters governed by this section. The petition and response forms shall be simple and concise, and their use by parties in actions brought pursuant to this section is mandatory." (§ 527.6, subd. (x)(1).) Also, judges are required to "receive any testimony that is relevant" and are authorized to "make an independent inquiry." (§ 527.6, subd. (i).) This provision has been interpreted to mean hearsay evidence, such as a declaration or police report, is admissible during hearings conducted pursuant to section 527.6. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 728-729; see *Kaiser Foundation Hospitals v. Wilson* (2011) 201 Cal.App.4th 550, 557.) Under this less formal approach to the admission of evidence, "[b]oth sides may offer evidence by deposition, affidavit, or oral testimony, and the court shall receive such evidence, subject only to such reasonable limitations as are necessary to conserve the expeditious nature of the harassment procedure set forth by … section 527.6" (*Schraer v. Berkeley Property Owners' Assn.* (1989) 207 Cal.App.3d 719, 733, fn. 6, italics omitted (*Schraer*).)

The Legislature offset the expedited procedures in section 527.6 with safeguards and several provisions limiting the scope of civil harassment restraining orders. (*Byers*, *supra*, 57 Cal.App.4th at pp. 811-812.) For instance, the statute initially limited the

duration of a restraining order to three years. (*Id*. at p. 812.) The current version of the statute restricts the duration to "no more than five years." (§ 527.6, subd. (j)(1).)

A second limitation is that any restraining order issued may enjoin only "harassment" as defined in the statute. (§ 527.6, subd. (b)(3); see *Byers*, *supra*, 57 Cal.App.4th at p. 812.) Conduct that serves a legitimate purpose is outside the definition of "harassment" (§ 527.6, subd. (b)(3)) and cannot be enjoined under the summary procedures of section 527.6 even if such conduct could be enjoined under normal (i.e., nontruncated) injunctive procedures. (*Byers*, *supra*, at p. 812.) Also, constitutionally protected activity is excluded from the definition of a "course of conduct"—a type of "harassment" that may be enjoined under the statute. (§ 527.6, subd. (b)(1); *Schraer*, *supra*, 207 Cal.App.3d at pp. 730–731.)

A third limitation safeguarding defendants involves the burden of proof. Section 527.6, subdivision (i) provides that "[i]f the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." (See Evid. Code, § 115 [burden of proof].)

A fourth set of safeguards assures that a person charged with harassment is given an opportunity to present his or her case. (*Schraer*, *supra*, 207 Cal.App.3d at p. 730.) Such a person "may file a response that explains, excuses, justifies or denies the alleged harassment, or may file a cross-petition." (§ 527.6, subd. (h).) In addition, such a person "shall be entitled, as a matter of course, to one continuance, for a reasonable period, to respond to the petition." (§ 527.6, subd. (*o*).) Additional continuances may be obtained upon a showing of good cause, which "may be made in writing before or at the hearing, or orally at the hearing." (§ 527.6, subd. (p)(1).)

B.      Modification of Restraining Orders

A fifth safeguard—the one at issue in this appeal—allows either party to bring a motion to terminate or modify the restraining order. Section 527.6, subdivision (j)(1)

provides: "In the discretion of the court, an order issued after notice and hearing under this section may have a duration of no more than five years, *subject to termination or modification by further order of the court* either on written stipulation filed with the court or on the motion of a party." (§ 527.6, subd. (j)(1), italics added.)

### 1. *Modifications Are Discretionary*

The first question of statutory interpretation we address is whether the phrase "[i]n the discretion of the court" applies to a trial court's determination of a request to modify or terminate a restraining order. We conclude it does.

The phrase "[i]n the discretion of the court" was placed at the beginning of the sentence addressing both the duration of the civil harassment restraining order and the modification or termination of such orders. It is possible to interpret the phrase as relating only to the court's authority to determine the duration of the restraining order or, alternatively, as relating to both the duration determination *and* further orders terminating or modifying the restraining order. The most natural reading of the phrase "[i]n the discretion of the court" placed in the opening position is that it applies to all decisions subsequently authorized in that sentence. This placement avoids the need to repeat the phrase or otherwise avoid the last antecedent rule.

Other aspects of the wording of the statute support the interpretation that the decision to modify or terminate a restraining order was committed to the trial court's discretion. Section 527.6 provides that restraining orders are "subject to termination of modification by further order of the court" in two situations—that is, where the parties file a written stipulation or where a party files a motion. (§ 527.6, subd. (j)(1).) The inclusion of these two procedural mechanisms implies courts do not have the authority to modify a restraining order on their own motion or on the request of a nonparty. The statute expresses no limitations on the court's issuance of a "further order" other than the need for a stipulation or a motion. (*Ibid.*) For instance, it does not specify what a

14.

moving party must prove to obtain a modification or termination. We interpret the existence of express restrictions and the absence of additional restrictions on a court's authority to modify or terminate a restraining order as most strongly supporting the inference that the Legislature intended modification or termination requests to be committed to the trial court's discretion.

The interpretation that commits modification and termination orders to the trial court's discretion also is supported by the principle that statutory provisions are not construed in isolation, but are read with reference to the entire scheme of law so that the scheme operates in harmony and retains its effectiveness. (*Scripps Health*, *supra*, 72 Cal.App.4th at p. 332.) Treating modification orders as within trial court's discretion makes section 527.6 internally consistent because the initial decision to issue a restraining order and the decision whether to renew a restraining order also are committed to the trial court's discretion. (See *Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226 [issuance of restraining order under § 527.6 is reviewed for abuse of discretion]; *Cooper, supra,* 242 Cal.App.4th at p. 89 ["trial court has discretion whether to renew the restraining order and the duration of the restraining order"].)

Consequently, we interpret section 527.6, subdivision (j)(1) as granting trial courts discretionary authority to determine whether to modify or terminate a civil harassment restraining order.

### 2. Role of Section 533

The second question of statutory interpretation we address relates to the scope of the trial court's discretionary authority—specifically, whether the trial court's discretion is limited to the grounds set forth in section 533 for the modification or dissolution of an ordinary injunction. Section 533 states:

> "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining

15.

order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order."

Thus, section 533 "articulates three independent bases on which a modification of an injunction may be predicated—(1) change in the facts, (2) change in the law, or (3) ends of justice." (*Luckett v. Panos* (2008) 161 Cal.App.4th 77, 85.)

Section 527.6 does not refer to section 533 and, therefore, does not expressly state whether or not section 533's terms apply to the modification of a civil harassment restraining order. Furthermore, section 527.6 makes no mention of the grounds for modifying a restraining order and does not define the evidence relevant to obtaining a modification. For instance, section 527.6 does not state the decision to modify a restraining order shall be based on the court's evaluation of the totality of the circumstances existing at the time of the modification hearing. As a result, section 527.6 has not impliedly eliminated the criteria set forth in section 533 by expressing its own criteria.

Grandfather argued below that a trial court's discretion to modify a civil harassment restraining order is not limited to the grounds set forth in section 533. Grandfather asserted that if the Legislature had intended such a limitation, it would have referred to section 533 in section 527.6's modification provision. We agree.

Section 533 applies to injunctions obtained through the Code of Civil Procedure's usual procedures. As described at length earlier, restraining orders issued under section 527.6 are not normal injunctions obtained under the usual procedures. Instead, they are obtained using simplified, quick procedures. Because the truncated, speedy procedures might result in specific terms, or even entire restraining orders, that are not appropriate for some or all of the order's duration, the Legislature provided the safeguard of the modification or termination request without limiting the grounds upon which a modification or termination could be obtained. (§ 527.6, subd. (j)(1).)

16.

In enacting and amending section 527.6, the Legislature clearly was capable of referring to other provisions in the Code of Civil Procedure when it intended them to apply to civil harassment restraining orders. (See *Russello v. United States* (1983) 464 U.S. 16, 23 [when a legislature " 'includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [it] acts intentionally and purposefully in the disparate inclusion or exclusion' "]; *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1148 [exclusion of a recovery of expert fees from the statute was notable where numerous statutes expressly included such fees].) For example, in subdivision (a)(2) of section 527.6, the Legislature used the phrase "as provided in section 374," which addresses the appearance of a minor in court without counsel. In subdivision (u)(2) of section 527.6, it incorporated the requirements of section 527.9, which governs the surrender of firearms. Also, subdivision (d) of section 527.6, states "the petitioner may obtain a temporary restraining order in accordance with Section 527, except to the extent this section provides an inconsistent rule." The reference to section 527 was convenient because its subdivision (c) sets forth detailed requirements that must be satisfied to issue a temporary restraining order without notice to the opposing party and, as a result, those requirements did not require repeating in section 527.6.

Based on section 527.6's references to other sections of the Code of Civil Procedure, we infer the Legislature did not intend section 533 and its three grounds for modification to be the only grounds for modifying a section 527.6 civil harassment restraining order. In short, had the Legislature wanted to include section 533 as a limitation on the scope of section 527.6's modification provision, " 'it was capable of doing so. It did not.' " (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1181.)

In adopting this interpretation, we have considered the Fourth District's interpretation of Family Code section 6345, subdivision (a). (*Loeffler v. Median* (2009) 174 Cal.App.4th 1495 (*Loeffler*).) That Family Code provision states: "*In the discretion*

17.

*of the court*, the personal conduct, stay-away, and residence exclusion orders contained in a court *order issued after notice and a hearing under this* article *may have a duration of not more than five years, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party*." (Fam. Code, § 6345, subd. (a), italics added.) The italicized words also are used in section 527.6, subdivision (j)(1). Thus, the Family Code provision that governs the modification or termination of permanent domestic violence restraining orders uses language that parallels the text of section 527.6, subdivision (j)(1).

In *Loeffler*, the trial court denied an application to terminate a domestic violence restraining order issued under Family Code section 6345, subdivision (a). (*Loeffler*, *supra*, 174 Cal.App.4th at p. 1498.) The appellate court evaluated the denial by applying the standards applicable to motions to dissolve injunctions set forth in section 533 and concluded the trial court acted within its discretion. (*Loeffler*, *supra*, at pp. 1498, 1504.) Despite the similar wording of the modification provisions in section 527.6, subdivision (j)(1) and Family Code section 6345, subdivision (a), we decline to extend the approach taken in *Loeffler* to motions to modify a civil harassment restraining order.

First, the arguments presented in *Loeffler* were different from Grandfather's arguments in this case. In *Loeffler*, the restrained party argued the protected party should have the burden of proving by a preponderance of the evidence that she continued to have a reasonable apprehension of future abuse. (*Loeffler*, *supra*, 174 Cal.App.4th at p. 1503.) It does not appear the restrained party argued in the alternative that the grounds listed in section 533 were too narrow. Thus, the Fourth District did not consider and resolve the specific arguments presented in this case. "Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered." (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2.) Second, in *Loeffler*, the appellate court did not analyze whether the provision for modification or termination of a domestic violence restraining order had

18.

been included in the statute as a safeguard counterbalancing the truncated nature of the procedures for obtaining such an order. As a result, we conclude *Loeffler* is distinguishable from the present case.

To summarize, we conclude a trial court's discretion to modify a civil harassment restraining order includes, *but is not limited to*, the three grounds articulated in section 553. Those grounds are (1) a material change in the facts, (2) a change in the law, or (3) the ends of justice. (*Luckett v. Panos*, *supra*, 161 Cal.App.4th at p. 85.)

### 3. Scope of a Trial Court's Discretion

The third issue of statutory interpretation we address relates to defining the scope of a trial court's discretion. We conclude the extent of a trial court's discretion to modify a civil harassment restraining order should be defined by considering (1) the Legislature's choice not to specify the grounds for modification, (2) the principles that define when a trial court may issue an initial restraining order and renew such an order, and (3) the legislative purpose underlying section 527.6. The Legislature's decision not to specify the grounds for modification and the many situations covered by section 527.6 suggests the grounds are too wide ranging and varied to be listed in the statute. Thus, the omission of grounds for modification suggests the Legislature determined trial court should have the flexibility to decide modification requests on a case-by-case basis after considering the relevant circumstances. We conclude this case-by-case evaluation and the identification of the relevant circumstances must be consistent with (1) the reasons for granting or renewing restraining orders and (2) the statute's purposes. In other words, a discretionary modification of a restraining order must not contradict the fundamental principles that define when the issuance and renewal of a restraining order is appropriate and must not undermine the purpose of section 527.6 or the balance of the conflicting interests struck by the Legislature in drafting the statute.

19.

The fundamental principles for the issuance of a restraining order under section 527.6 were set forth in *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228:

> "Under section 527.6, the court may grant an injunction when there is a threat of harm because of harassment, as defined in the statute. [Citations.] The 'purpose of a prohibitory injunction is to prevent future harm to the applicant by ordering the defendant to refrain from doing a particular act. [Citations.] Consequently, injunctive relief lies only to prevent threatened injury and has no application to wrongs that have been completed. [Citation.] It should neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future.' [Citation.]" (*Id*. at pp. 1265–1266, italics omitted.)

Stated another way, "[a]n injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris*, *supra*, 248 Cal.App.4th at p. 496.)[5]

This basic idea of preventing future harm also appears in the standard that trial courts apply to requests to renew a restraining order. In *Cooper*, *supra*, 242 Cal.App.4th 77, the court addressed "the proper standard for the trial court to apply in exercising its discretion" to renew a restraining order and concluded "a restraining order should be renewed only when the trial court finds a reasonable probability that the defendant's wrongful acts would be repeated in the future." (*Id*. at p. 90.)

We conclude this principle about the prevention of reasonably probable future harm can be adapted to a restrained party's modification request to define the extent of

---

[5]     In the context of a section 527.6 restraining order, "harassment" includes a credible threat of violence. " 'Credible threat of violence' is a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).) Here, when the trial court issued the restraining order in March 2015, it impliedly found the statements about the grandparents fleeing with the child to be a credible threat of kidnapping, which qualifies as "violence" for purposes of section 527.6.

20.

the trial court's discretionary authority. Specifically, when a trial court, after considering the relevant evidence presented, determines there is no reasonable probability a particular act of harassment will be committed in the future, the court has the discretion to modify the terms of the restraining order addressing that particular act of harassment.[6] On the fourth question of statutory interpretation, we conclude the restrained party, as the party requesting the modification, has the burden of proving by a preponderance of the evidence that a reasonable probability does not exist. (See Evid. Code, §§ 115 [burden of proof], 500 [allocation of burden of proof].)

A further question presented relates to the evidence relevant to this inquiry. We conclude " 'the determination of whether it is reasonably probable an unlawful act will be [occur] in the future rests upon the nature of the unlawful [harassment] evaluated in the light of the relevant surrounding circumstances of its commission and whether precipitating circumstances continue to exist so as to establish the likelihood of future harm.' " (*Harris*, *supra*, 248 Cal.App.4th at pp. 499-500, quoting *Scripps Health*, *supra*, 72 Cal.App.4th at p. 335, fn. 9.)

### 4. Trial Court's View of Its Discretion

Here, the wrongful act that resulted in the inclusion of the child in the restraining order was the grandparents' threat to take the child and flee. Thus, the orders requiring Grandfather and the grandmother to stay 100 yards away from the child were designed to protect the child from being abducted by her grandparents and to protect Mother from the emotional distress that an abduction would cause. (See § 527.6, subd. (b)(3).) Accordingly, in considering Grandfather's request to modify, the trial court had the

---

[6] This statement is not an all-encompassing definition of the extent of a trial court's discretion. A request to modify a restraining order is a procedural mechanism that, among other things, allows the trial court to fine tune the terms of a restraining order after seeing how the specific terms have impacted the protected and restrained parties and their activities. It is beyond the scope of this opinion to describe the various types of fine tuning that may be appropriate under subdivision (j)(1) of section 527.6.

discretion to relax or eliminate the stay-away order as it pertained to the granddaughter if it found, by a preponderance of the evidence, that there was no longer a reasonable probability that Grandfather would be involved in an attempt to abduct the child or otherwise endanger her if she was in the custody and presence of her father.

The evidence relevant to this question of a reasonable probability includes the circumstances surrounding the original threat. (*Harris*, *supra*, 248 Cal.App.4th at p. 499.) In evaluating that evidence, a court considering a modification request must accept the findings underlying the initial issuance of the restraining order where that order has become final. A motion to modify is not a vehicle for challenging "the findings and evidence underlying the original order or the validity of that order." (*Cooper*, *supra*, 242 Cal.App.4th at p. 92 [renewal request].) Instead, the court addressing a modification request must consider the circumstances that produced that original finding of harassment in order to understand why the harassment occurred and use that understanding to evaluate the conditions existing at the time of the modification hearing.

Accordingly, the trial court in this case should have considered the surrounding circumstances in evaluating the threat of kidnapping that was the original basis for requiring Grandfather to stay away from the girl. (*Harris*, *supra*, 248 Cal.App.4th at p. 499.) In addition, the trial court should have considered " 'whether precipitating circumstances continue to exist so as to establish the likelihood of future harm.' " (*Harris*, *supra*, at pp. 499-500.) A proper exercise of a trial court's discretion included a comparison of the circumstances that caused the court to grant the initial restraining order and the circumstances that existed at the time of the hearing on the request to modify.

The trial court in this case did not undertake the foregoing evaluation of the circumstances and make the relevant comparison. Instead, the court stated, "I am doing my best not to rehear the original proceeding." In addition, the court determined the existing family court custody order was not relevant because custody had not been discussed in the original order.

In contrast, we conclude the existing child custody order, which gave Joseph custody 50 percent of the time, was relevant to whether Grandfather would attempt to abduct the child when she was in the custody and presence of her father. Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The existing custody arrangements were relevant because it may be less probable that grandparents would kidnap a grandchild (1) when their son has a court order granting him custody 50 percent of the time than (2) when the family law proceeding is just beginning and the son has minimal, if any, right to custody.[7] An evaluation of this probability by the trial court includes an assessment of the consequences of carrying out the threat and how those consequences would influence Grandfather's behavior. For example, if an attempt to abduct the child would have a potential adverse effect on the level of custody granted to Joseph, that potential adverse consequence could deter an attempt to abduct the child. In other words, grandparents might be less likely to abduct a grandchild if it would cause the family court to reduce or eliminate their son's custody of the child.

When, as here, a trial court's decision reflects an unawareness or misunderstanding of the full scope of its discretion, the court has not properly exercised its discretion under the law. (*Cooper*, *supra*, 242 Cal.App.4th at p. 90.) In such situations, the trial court's decision " 'is subject to reversal.' " (*Ibid*.)

## DISPOSITION

The October 25, 2018, order denying the request to modify civil harassment restraining order is reversed and the trial court is directed to vacate the order. The trial

---

[7] The exact time of the threat to kidnap does not appear in the appellate record. As a result, we cannot correlate that event to the custody order, if any, in place at the time of the threat.

23.

court shall, in light of this ruling and exercising its full discretion, determine the prevailing party in this motion, if any.**8**  The parties shall bear their own costs on appeal.

FRANSON, Acting P.J.

WE CONCUR:

SMITH, J.

DeSANTOS, J.

---

8     If, after remittitur, Mother's request for attorney fees is presented to the trial court, the decision in this appeal is among the factors relevant to the trial court's discretionary determination of whether Mother is the prevailing party under subdivision (s) of section 527.6.  (See 1 Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2020) §§ 2.84–2.85 [prevailing party determination].)  In addition, in exercising that discretion, it would be appropriate for the trial court to evaluate how the motion to modify would have been decided under the standards set forth in this opinion.