Filed 7/14/23

**CERTIFIED FOR PARTIAL PUBLICATION\***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KAMILA MALINOWSKI,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>JUSTIN STEVEN MARTIN,<br><br>     Defendant and Respondent. | A164713<br><br>(San Mateo County<br>Super. Ct. No. 21FAM01531) |

In 2018, Kamila Malinowski filed for dissolution of marriage from Justin Martin. While that case was pending, in September 2021, Malinowski filed an ex parte request for a domestic violence restraining order (DVRO) under the Domestic Violence Prevention Act (DVPA; Fam. Code, § 6200 et seq.), seeking to protect herself and the parties' two children (as additional protected persons) from Martin. Pending a hearing on the merits of Malinowski's request, the trial court issued a domestic violence temporary restraining order (DVTRO) against Martin with "no-contact" and "stay-away" provisions. Subsequently, however, the court modified the DVTRO to allow Martin brief and peaceful contact with the children consistent with a visitation order entered in July 2021 in the dissolution case.

---

\*     Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts A and B of the Discussion.

On appeal, Malinowski contends the trial court erred by modifying the DVTRO without adhering to section 533 of the Code of Civil Procedure,[1] which requires notice and a showing of changed circumstances for modification or dissolution of an injunction or a temporary restraining order.

In the unpublished portion of our opinion, we address threshold questions of appealability and mootness. Though we find the case is moot, we will exercise our discretion to retain and decide the appeal because it presents an important and potentially recurring issue of law in the context of DVPA cases involving parallel dissolution proceedings. In the published portion of our opinion, we conclude that section 533 does not provide the exclusive means by which a trial court in a DVPA action may modify a DVTRO. Thus, a trial court is not necessarily obligated to proceed under section 533 before modifying a DVTRO to allow for exceptions consistent with child visitation ordered in a parallel dissolution case. But in an appropriate case, the requirements of due process may require the trial court to consider evidence presented at a noticed hearing consistent with section 533 in order to resolve disputed factual matters essential to the court's reasonable exercise of discretion to modify or terminate a DVTRO.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Ex Parte Request for DVRO**

On September 14, 2021, Malinowski filed an ex parte request for a DVRO against Martin, seeking to protect herself, as well as the parties' two children as additional protected persons. Malinowski requested that Martin have no direct or indirect contact with her or the children, and that he be ordered to stay at least 100 yards from them. In her application, Malinowski

_____

[1] Further unspecified section references are to the Code of Civil Procedure.

2

disclosed the case numbers for the parties' marital dissolution action and a prior DVPA case. Her application indicated she had a child custody or visitation order that she wanted changed and asked that Martin be ordered to make a debt payment of $17,000 to the court-appointed child custody evaluator, Dr. Robin Press, for a custody evaluation.

In her supporting declaration, Malinowski described prior instances of domestic violence by Martin, including acts of abuse " 'going back to 2015' " which resulted in a three-year DVRO in October 2020 in favor of Malinowski that did not include the children as additional protected persons. According to Malinowski, the trial judge in the prior DVPA case (Hon. Richard Dubois) indicated he would have included the children "but for the fact that the Family Court had a careful eye on their safety and health." She further alleged nine specific instances of alleged physical and verbal abuse by Martin against the children in April, May, June, and August of 2021. In the August incident, Martin allegedly threatened to " 'punch' " one of the children in the head. Though Malinowski acknowledged that in March 2021, the trial court in the dissolution case "ordered the removal of supervised-visitation protective measures of our children and doubled the amount of time that the children would spend with their Father,"[2] she claimed the children's "health, safety, and emotional condition [had] dramatically declined" since unsupervised visits began.

The trial court (Hon. Rachel Holt) immediately issued a DVTRO against Martin that included the children as additional protected persons

---

[2] Based on the record, it appears the trial court in the dissolution matter issued two orders regarding visitation, one in March 2021 and another in July 2021. Malinowski disclosed only the former order in her supporting declaration.

and contained a no-contact order and a stay-away order.[3] The DVTRO identified no exceptions to the no-contact and stay-away orders. By its terms, the DVTRO was set to expire at the conclusion of a hearing set for October 7, 2021.

### B. Peremptory Challenge and Amended DVTRO

After the DVPA case was assigned for all purposes to the Honorable Sean Dabel, who was also the judge in the dissolution case, Malinowski filed a peremptory challenge under section 170.6. On September 22, 2021, the trial court granted the peremptory challenge and issued an order of reassignment. The court also issued an amended but mostly identical DVTRO that included the children as additional protected persons and extended the order's protections through October 8, 2021. Like the original DVTRO, the amended version contained no-contact and stay-away orders without identifying any exceptions. On October 8, the trial court set the matter for a further hearing on November 1, 2021, and ordered the DVTRO to remain in place until then.

### C. November 2021

In advance of the November 1, 2021, hearing, the parties filed trial briefs, witness and exhibit lists, and motions in limine. However, the matter

---

[3]    Notably, the trial court did not check a box in item 6a of the DVTRO (Judicial Council form DV-110) applying the no-contact order to the "Additional Protected Persons" identified in item 3 (e.g., the parties' children). It is unclear whether this was intentional or inadvertent. Additionally, we note that in item 12 of the DVTRO form, the court checked a box indicating that Malinowski's request to modify the existing child custody and visitation order was "[d]enied until the hearing." Yet the court also issued a child custody and visitation order on Judicial Council form DV-140 (indicating "[n]o visitation to" Martin) even though a DV-140 order normally issues only when a request for custody and visitation has been "[g]ranted" under item 12 of the DVTRO.

4

was reassigned several times and continued for a trial setting conference on November 17 before Judge Holt. By court order, the amended DVTRO was set to expire at the conclusion of the November 17 hearing.

At the November 17 trial-setting conference, Judge Holt calendared the DVRO trial for the earliest available date, which was in October 2022. Martin informed Judge Holt that he had not had any contact with the children for three months; that Malinowski had failed to comply with Judge Dabel's order to advance the $17,000 in fees for Dr. Press's report; and that Judge Dabel had already "lifted the restriction of the supervised visitation that had been in effect for many months." Emphasizing that all but one of the counts in the domestic violence action had been brought to the attention of Dr. Press as part of the evaluation process in the dissolution action, Martin urged Judge Holt to defer to Judge Dabel's decision in July 2021 that allowed child visitation given his "working history in this case" for years.

After further argument, Judge Holt ruled that "[i]n light of the fact that there are some subsequent decisions that may be made by Judge Dabel at the end of this month," the trial court would reissue the DVTRO with "modifications providing for the exceptions for any brief and peaceful contact that is required for any court ordered visitation of the minor children, pending any further orders in Judge Dabel's department." Judge Holt clarified she was "simply providing the exceptions" that were not included in the original September 2021 DVTRO and ordered that the amended DVTRO "remain in full force and effect with the modifications" through October 20, 2022, at 2:00 p.m. Judge Holt scheduled a review hearing for January 5, 2022, and instructed Malinowski to prepare a formal written order consistent with the court's rulings.

5

Thereafter Malinowski filed an ex parte application asking the trial court to reconsider or set aside its November 17, 2021, ruling. Malinowski argued that the court's modification of the DVTRO improperly removed the no-contact and stay-away provisions without notice or an evidentiary showing as required under section 533. The court denied the application.

**D. January 5, 2022**

At the January 5, 2022, review hearing, Judge Holt began by recalling she had previously continued the matter because "you were all going to be back in front of Judge Dabel in regards to some possible custody modification. I had made the exception for brief and peaceful contact. My understanding is, that, apparently, wasn't filed.[4] Judge Dabel didn't make any changes. Judge Dabel has since left the family law department." Judge Holt further noted that both the dissolution case and the DVPA action were now assigned to her.

Martin explained at the hearing that he had not had contact with the children for five months, and he requested "the immediate restoration of contact." Martin represented that all but one of the abuse allegations in Malinowski's DVRO application would be covered in Dr. Press's forthcoming report. Martin emphasized there was "no battery in any of the counts" and stated the children "are not in any unreasonable risk of harm."

Judge Holt set another review hearing for March 1, 2022, based on her stated hope that Dr. Press's report would be released by then. Following the

---

4       Based on the papers filed in connection with Martin's motion to dismiss this appeal (which we denied on October 3, 2022), it appears there was a delay in finalizing the written order after the November 17, 2021, hearing. However, Malinowski ultimately submitted a proper order which was signed by Judge Holt and entered on January 5, 2022, following the review hearing on that date.

hearing, Judge Holt issued a second amended DVTRO on the revised version of Judicial Council form DV-110, which became effective January 1, 2022. In it, the court granted the no-contact and stay-away orders in items 8a and 9a, respectively, but also checked boxes in items 8b and 9b for "Exception" and "Other (*explain*): see MC-025 Attachment to this Order." In the attached form MC-025, the court indicated it was "mak[ing] the exception for brief and peaceful contact with the minor children only during such court-ordered contacts or visits as may be ordered following the entry of this Second Amended Temporary Restraining Order." By its terms, the second amended DVTRO was set to expire at conclusion of the DVRO trial in October 2022.

**E. March 1, 2022**

At the March 1, 2022, review hearing, Judge Holt began with a comprehensive account of the "fairly complex history" of the case to date. As she explained, when Malinowski first filed her DVRO application on September 14, 2021, "somehow it was missed that there was already an active dissolution matter, as well as the outstanding case number that the other restraining order had been issued under," and thus, instead of going to Judge Dabel, the application went to Judge Holt "as the signing judge on Tuesdays, which I can tell you all is a flurry of ex partes in the midst of hearings in the morning and [requests for orders] in the afternoon." Judge Holt had issued the initial DVTRO without having "the independent knowledge of what had long been going on in this case in regards to custody and evaluation." After the matter was assigned to her, she "included the exception for any court-ordered visitation to give Judge Dabel the opportunity to make whatever orders he felt were appropriate" based on his significant history with the dissolution case involving the same parties.

7

Judge Holt further explained that having now had the opportunity to review all of the relevant filings and transcripts for "the hearings that occurred in front of Judge Dabel through early last year, spring, and summer," she understood there was a "current custody order" in place dated July 1, 2021, "wherein Judge Dabel increased the timeshare with [Martin] to 15 hours per week" with "unsupervised visits, but supervised exchanges." Judge Holt explained "the exceptions for court-ordered visitation" that she ordered in November 2021 "allow[ed] for visitation pursuant to that July 1st order."

Judge Holt ultimately ruled that because Judge Dabel's July 2021 visitation order was still in full force and effect, she would delete the prior September 14 order that included no visitation to Martin. Judge Holt further ordered the DVTRO to remain in effect until the DVPA hearing in October 2022, but "with the exceptions for brief and peaceful contact for court-ordered visitation." Malinowski objected "to the Court's ruling as it did without taking any evidence," and because "[t]he matter wasn't even on for a ruling on visitation today."

### F. Notice of Appeal

On March 7, 2022, Malinowski filed a notice of appeal from the following orders: (1) the November 17, 2021, minute order allowing for peaceful contact for visitation and the safe exchange of the children; (2) the December 1, 2021, order denying Malinowski's ex parte application to reconsider or set aside the November 17 ruling; (3) the second amended DVTRO making exceptions to the no-contact order; and (4) the March 1, 2022, ruling authorizing Martin to have unsupervised visits with the children pursuant to the terms of the visitation order issued by Judge Dabel in July 2021 in the dissolution case.

DISCUSSION

## A. Appealability

As a preliminary matter, Martin argues that the statement of appealability in Malinowski's opening brief fails to comply with California Rules of Court, rule 8.204(a)(2)(B), because Malinowski does not identify the judgment or orders from which she appeals. Even so, we will exercise our discretion to disregard such noncompliance (Cal. Rules of Court, rule 8.204(e)(2)(C)), as the notice of appeal clearly identifies the four orders from which the appeal was taken.

Martin nevertheless maintains that Malinowski fails to demonstrate that any of the four orders listed in the notice of appeal are, in fact, appealable. Relying on *Smith v. Smith* (2012) 208 Cal.App.4th 1074 (*Smith*), Martin argues that the orders are "in the nature of" nonappealable temporary custody orders and that the minute orders for the hearings on November 17, 2021, and March 1, 2022, are likewise not appealable because they were never reduced to writing. We conclude otherwise.

Section 904.1, subdivision (a)(6), makes "an order granting or dissolving an injunction" appealable. (See *In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 255; *S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1257–1258.) Likewise, an order granting or refusing to grant a temporary restraining order is directly appealable. (*Courtesy Temp. Serv. v. Camacho* (1990) 222 Cal.App.3d 1278, 1286; *McLellan v. McLellan* (1972) 23 Cal.App.3d 343, 357.) Orders modifying a preliminary injunction " 'in important particulars' " have also been found to be appealable. (*Chico Feminist Women's Health Center v. Scully* (1989) 208 Cal.App.3d 230, 252–253.) Here, the orders in question are modifications of a DVTRO in important particulars; thus, they are appealable. And while an appeal does

not lie from a minute order where a formal order is required (*Smith, supra,* 208 Cal.App.4th at p. 1091), it appears from the record that, despite some initial delays, the substance of the trial court's rulings on November 17, 2021, and March 1, 2022, were eventually reduced to formal written orders. Accordingly, we are satisfied that the instant appeal lies from appealable orders.

### B. Mootness

In her reply brief on appeal, Malinowski acknowledged "the potential mootness of this appeal" due to the completion of the DVRO trial in October 2022, but argued that an exception to the mootness doctrine applies. In view of this information, we requested and received supplemental briefing from Martin on the mootness issue, as well as a copy of the trial court's written decision after the DVRO trial. On our own motion, we now take judicial notice of the trial court's December 13, 2022, statement of decision after the DVRO trial. (See Evid. Code, § 452, subd. (d); *In re Karen G.* (2004) 121 Cal.App.4th 1384, 1390 [judicial notice of minute order in deciding mootness of appeal].)

The statement of decision confirms that the trial on Malinowski's request for a DVRO against Martin in favor of Malinowski and the children was completed in late October 2022 and that her request was denied. Accordingly, the challenged DVTRO is no longer in effect (see Fam. Code, § 245, subd. (c)), and the case is in fact moot (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054).

Nevertheless, because the appeal raises an issue of continuing importance and involves a question "capable of repetition, yet evading review," we will exercise our discretion to reach the merits of the appeal. (*In re Yvonne W.* (2008) 165 Cal.App.4th 1394, 1404.) Specifically, in DVPA

10

cases involving parallel dissolution proceedings, an appeal from the modification of a DVTRO will likely become moot due to the generally short duration of temporary protective orders. (See Fam. Code, § 242; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420 (*Gonzalez*) [noting it " 'rare for a Court of Appeal to get a peek into the world of domestic violence proceedings, because these protective orders are nearly never appealed' "].) This appeal provides us an opportunity to provide useful guidance to parties and trial courts in DVPA cases involving parallel dissolution proceedings.

### C. Modification of DVTRO

Section 533 governs the general process for modifying or dissolving injunctions and temporary restraining orders. It provides: "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order."

Here, Malinowski argues the trial court did not conduct a noticed evidentiary hearing pursuant to section 533 before it modified the no-contact and stay-away provisions of the DVTRO to allow for exceptions consistent with the child visitation ordered in the dissolution proceeding. Even assuming that is so, we conclude the DVPA did not require the court to proceed under section 533 in modifying the DVTRO.

The grant or denial of a DVPA protective order is reviewed for abuse of discretion. (*Gonzalez, supra,* 156 Cal.App.4th at p. 420.) This standard also applies to review of an order modifying an injunction. (*In re Butler* (2018) 4

11

Cal.5th 728, 738.) Accordingly, " 'we determine "whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered." [Citation.] We presume an order is correct and imply findings necessary to support the judgment. [Citation.] An abuse of discretion must be clearly established to merit reversal on appeal. [Citation.] To the degree resolution of the appeal requires statutory interpretation, we undertake that review de novo.' " (*Hupp v. Solera Oak Valley Greens Assn.* (2017) 12 Cal.App.5th 1300, 1309–1310.) A trial court abuses its discretion when its acts transgress the confines of the applicable principles of law. (*Du-All Safety, LLC v. Superior Court* (2019) 34 Cal.App.5th 485, 495.)

The purpose of the DVPA "is to prevent acts of domestic violence, abuse, and sexual abuse and to provide for a separation of the persons involved in the domestic violence for a period sufficient to enable these persons to seek a resolution of the causes of the violence." (Fam. Code, § 6220.) "To this end, the DVPA provides for the issuance of restraining or 'protective' orders, either ex parte or after hearing, that enjoin specific acts of abuse." (*Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 334.) The court may issue an ex parte restraining order based "solely on the affidavit or testimony of the person requesting the restraining order" where the affidavit or testimony "shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (Fam. Code, § 6300, subd. (a).) After notice to the restrained party and a hearing on the merits of the domestic violence allegations, the court may issue "any of the orders described" in Family Code sections 6320 through 6327. (Fam. Code, § 6340, subd. (a)(1).)[5]

---

[5] The DVPA expressly authorizes the trial court to issue a variety of protective orders on an ex parte basis. (See Fam. Code, §§ 6321, subd. (a) [excluding party from family or other dwelling], 6322 [enjoining additional

Division 2, part 4 of the Family Code generally governs the matter of ex parte temporary restraining orders issued under the DVPA. (See Fam. Code, §§ 240, subd. (c), 6327.) A hearing on the DVRO request must typically be held within 21 to 25 days from the date a DVTRO is granted or denied. (Fam. Code, § 242, subd. (a).) However, the respondent "shall be entitled" to one continuance (*id.*, § 245, subd. (a)), and the trial court additionally "may," on a written or oral request of either party or on the court's own motion, continue the hearing for good cause (*id.*, subd. (b)). If the hearing is continued, any DVTRO that has been issued will remain in effect until the end of the continued hearing, unless otherwise ordered by the court (*id.*, subd. (c)), and the extended DVTRO "shall state on its face the new date of expiration of the order" (*id.*, subd. (d)). If the DVTRO is extended, "[a] fee shall not be charged." (*Id.*, subd. (e).) As pertinent to our inquiry here, the second sentence of Family Code section 245, subdivision (c), states that "[i]n granting a continuance, the court may modify or terminate a temporary restraining order."

From "the plain, commonsense meaning" of the statutory language (*People v. Manzo* (2012) 53 Cal.4th 880, 885), we see that Family Code section 245 addresses both mandatory ("shall") acts and permissive ("may") acts of the trial court in connection with continuing a DVRO hearing and extending a DVTRO in the interim. The permissive phrasing in subdivision (c) of Family Code section 245 leads us to conclude the decision to modify a DVTRO pending a continued hearing is committed to the trial court's discretion.

---

specified behaviors], 6323, subd. (a)(1) [temporary custody and visitation orders], 6323.5, subd. (b) [restraining access to records and information of minor child of parties], 6324 [temporary use of real and personal property], 6325 [restraints on property of married persons], and 6325.5 [prohibiting fraudulent activities regarding insurance beneficiaries].)

13

(*Standard Pacific Corp. v. Superior Court* (2009) 176 Cal.App.4th 828, 833.) Significantly, Family Code section 245 confers such discretion without reference to any of the procedural or substantive requirements of section 533.[6]

Notwithstanding the language of section 245, Malinowski relies on *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495 (*Loeffler*) for the proposition that a trial court is powerless to modify a DVTRO without regard to section 533. We are not persuaded.

In *Loeffler*, the appellant moved for termination of the restraining order against him pursuant to Family Code section 6345. The appellate court affirmed the trial court's denial of termination, applying the standards in section 533, including its required showing of changed circumstances. As part of its analysis, *Loeffler* rejected the appellant's reliance on *Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275 (*Ritchie*), which held that on a request to renew an expiring DVRO, the protected party must establish a reasonable apprehension of future abuse. (See *Loeffler*, at pp. 1502–1503.) In concluding that *Ritchie* did not govern DVRO termination decisions, *Loeffler* emphasized that "the party protected by a restraining order has *already* made the required showing to obtain a renewal of the order." (*Loeffler*, at p. 1504.) Thus, *Loeffler* reasoned, when a restrained party seeks to terminate a DVRO, the burden is on that party "to show by a preponderance of the evidence that

---

6    Although Family Code section 245 was enacted in 1992 (Stats. 1992, ch. 162, § 10), prior to the enactment of section 533 (Stats. 1995, ch. 796, § 8), the language in question ("In granting a continuance, the court may modify or terminate a temporary restraining order") was added by amendment to Family Code section 245 in 2015. (See Stats. 2015, ch. 411, § 6.) Thus, the Legislature had the opportunity to incorporate section 533 by reference into Family Code section 245, subdivision (c), but did not do so.

one of the circumstances set forth in [section 533] is present and justifies a termination of the restraining order." (*Loeffler*, at p. 1504.)

We find *Loeffler* distinguishable on a number of fronts. Starting with an obvious dissimilarity, we note *Loeffler* involved a motion to terminate a permanent DVRO issued after notice and hearing, whereas the instant matter involves a prehearing request to modify a DVTRO pending a continued merits hearing. Additionally, the burden of proof question raised in *Loeffler* was tethered to an underlying factual dispute about the threat of future abuse, thereby making relevant any changed facts or circumstances that would justify termination of the DVRO. (See *Loeffler*, *supra*, 174 Cal.App.4th at pp. 1505–1508 [restrained party's move out of state and recent marriage did not sufficiently negate protected party's reasonable fear of abuse and harassment].) Here, in contrast, the trial court's decision to carve out exceptions to the DVTRO that would allow for court-ordered visitation pending the DVRO trial was based largely on the undisputed fact that the dissolution court had already entered a visitation order allowing Martin to have certain contact with the children.[7] Finally, *Loeffler* did not purport to hold that section 533 provides the *exclusive* standard under which a trial court in a DVPA action may modify or dissolve a protective order. In sum, *Loeffler* does not provide controlling authority on the precise question raised in this appeal.

Furthermore, at least one appellate court has distinguished and declined to follow *Loeffler* in determining the scope of a trial court's discretion

---

[7] Notably, Malinowski does not contend it was outside the bounds of reason for the trial court to defer to and avoid inconsistent rulings with the adjudications and rulings of the court in the dissolution matter on the issues of custody and visitation given the latter court's familiarity with the parties and the case.

to modify a civil harassment restraining order under section 527.6. In *Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 523 (*Yost*), a trial court had issued a civil harassment restraining order that prohibited a paternal grandfather from contacting his grandchild due to a risk of abduction. (*Yost*, at p. 516.) After the family court, in a parallel proceeding, awarded the child's father 50 percent custody of the child, the grandfather sought modification of the restraining order on the basis that the changed custody arrangement eliminated the threat of abduction. (*Id.* at p. 515.) The trial court denied modification on the ground that the family court's custody order was not a relevant or "proper basis" to modify the restraining order. (*Id.* at p. 519.)

*Yost* reversed. As relevant here, *Yost* specifically addressed whether the trial court's discretionary authority to modify the restraining order was limited to the grounds set forth in section 533 pertaining to the modification or dissolution of an "ordinary" injunction. (*Yost*, *supra*, 51 Cal.App.5th at pp. 524–526.) *Yost* ultimately concluded that section 527.6 commits the modification or termination of a civil harassment restraining order to the trial court's discretion and that the exercise of such discretion "includes, *but is not limited to*, the three grounds articulated in" section 533. (*Yost*, at pp. 522–530.) As part of its analysis, *Yost* determined that the Legislature's decision not to specify the grounds for modification under section 527.6 meant that trial courts have the flexibility to decide modification requests on a case-by-case basis, consistent with the reasons for granting or renewing restraining orders and the purposes of the statute. (*Id.* at pp. 522–530.)

Although *Yost* did not involve a DVPA protective order, the court made several observations about section 533 and section 527.6 that we find applicable and persuasive to the DVPA proceeding at bar. As *Yost* explained, section 533 pertains to "the modification or dissolution of an ordinary

16

injunction" that is "obtained under the usual procedures." (*Yost*, *supra*, 51 Cal.App.5th at p. 524.) Civil harassment restraining orders, by contrast, "are not normal injunctions" because they are "obtained using simplified, quick procedures." (*Ibid.*) To "offset the expedited procedures" in section 527.6, the Legislature provided several "safeguards" in the statute, including restricting the duration of a civil harassment restraining order to five years; enjoining " '[h]arassment' " only as defined in the statute; assuring the alleged harasser has the opportunity to present a defense and obtain reasonable continuances of the hearing; and allowing either party to move to terminate or modify the restraining order. (*Yost*, at pp. 521–522, citing § 527.6, subds. (b)(3), (h), (i), (j)(1), (o), (p)(1).) As *Yost* reasoned, "[b]ecause the truncated, speedy procedures might result in specific terms, or even entire restraining orders, that are not appropriate for some or all of the order's duration, the Legislature provided the safeguard of the modification or termination request without limiting the grounds upon which a modification or termination could be obtained." (*Yost*, at p. 524.)

The same can be said for the DVPA, which also "provide[s] expedited and simplified procedures for victims of violence, abuse, and harassment to obtain temporary and permanent restraining orders to protect them." (*S.A. v. Maiden* (2014) 229 Cal.App.4th 27, 40; *Rivera v. Hillard* (2023) 89 Cal.App.5th 964, 983 (*Rivera*) [DVPA proceedings are "streamlined" and "expeditious"].) Importantly, the DVPA contains many of the same safeguards that *Yost* identified in section 527.6. For instance, the duration of a DVRO is initially restricted to five years. (Fam. Code, § 6345, subd. (a).) The DVPA enjoins only conduct specifically defined by statute. (Fam. Code, §§ 6203 [defining "abuse"], 6211 [defining "domestic violence"], 6320, subd. (a) [enjoining harassment, threats, and violence].) A restrained person may file

a response that explains or denies the allegations in the petition and is entitled to one continuance of the hearing as a matter of course. (Fam. Code, §§ 243, subd. (c), 245, subd. (a).) Additional continuances for good cause are also available. (Fam. Code, § 245, subd. (b).) Moreover, a DVRO is subject to termination or modification on the motion of a party (Fam. Code, § 6345), and a DVTRO is subject to termination or modification within the discretion of the trial court (Fam. Code, § 245, subd. (c)). Additionally, unlike "ordinary" injunctions, DVPA matters frequently are related to ongoing family law matters in which overlapping orders are issued concerning custody and visitation, property control, and other issues. (See, e.g., *Rivera*, *supra*, 89 Cal.App.5th at p. 984 [recognizing concurrent jurisdiction between Virginia court in dissolution matter and California court in DVPA action and finding no conflicts between courts regarding property ownership interests of parties].) Accordingly, *Yost*'s distinction between "ordinary" injunctions and restraining orders subject to section 533, and those issued under the "simplified, quick procedures" of a statutory scheme with safeguards that are not limited to the terms of section 533, aptly applies to this case.

Indeed, the record here illustrates perfectly why a DVTRO issued under expedited procedures may require flexibility and nimbleness for modifications as further information comes to light. Malinowski's DVRO application, though procedurally sufficient for purposes of obtaining an initial DVTRO (Fam. Code, § 6300, subd. (a)), omitted reference to Judge Dabel's July 2021 visitation order, even as Malinowski sought to prohibit Martin from all contact with the children. Additionally, Malinowski's application sought an order requiring Martin to pay the child custody evaluator's fee despite an existing order in the dissolution action requiring her to pay the fees. Malinowski's application was presented to Judge Holt in "a flurry of ex

partes," which resulted in the quick issuance of a DVTRO that conflicted (or as to the evaluator's fee threatened to conflict) with the extant rulings of the dissolution court.

*Yost* further observed that "the Legislature clearly was capable of referring to other provisions in the Code of Civil Procedure when it intended them to apply to civil harassment restraining orders," as demonstrated in other subsections of section 527.6. (*Yost*, *supra*, 51 Cal.App.5th at p. 525.) Because section 527.6 contained no reference to section 533, *Yost* "infer[red] the Legislature did not intend section 533 and its three grounds for modification to be the only grounds for modifying a section 527.6 civil harassment restraining order." (*Yost*, at p. 525.) Likewise, the DVPA itself contains several references to specific sections of the Code of Civil Procedure, but it makes no mention of section 533. (See *ante*, fn. 6; e.g., Fam. Code, § 6229 [citing § 374]; Fam. Code, § 6301, subd. (a) [citing § 372, subd. (b)]; Fam. Code, § 6322.5, subd. (c)(2) [citing § 414.10]; Fam. Code, § 6340, subd. (a)(2)(A)(i) [citing § 415.50]; Fam. Code, § 6345, subd. (d) [citing § 1005, subd. (b)].) Thus, we may similarly infer the Legislature did not contemplate that section 533 provides the exclusive statutory vehicle for modifying or terminating a DVTRO, or that courts should have no discretion to act without adhering to the particular procedural and substantive requirements articulated in section 533.

Malinowski's contention that the requirements of section 533 are indirectly incorporated into the DVPA through Family Code section 210 is unavailing. Family Code section 210 provides that "[e]xcept to the extent that any statute or rules adopted by the Judicial Council provide applicable rules, the rules of practice and procedure applicable to civil actions generally . . . apply to, and constitute the rules of practice and procedure in,

19

proceedings under" the Family Code. However, Family Code section 245, subdivision (c), specifically provides that in granting a continuance in a DVPA case, the court has authority to modify or terminate a temporary restraining order. Accordingly, resort to section 533 by way of Family Code section 210 is not required.

Notwithstanding *Yost*'s other conclusions, Malinowski maintains that *Yost* still affirms "the need for the most rudimentary accommodations for due process." Malinowski contends she was denied due process because the trial court modified the DVTRO after expressly refusing her request to present evidence and because the court imposed no burden "of any kind" on Martin, who was the party seeking the modification.

We agree that under appropriate circumstances, the requirements of due process may require a trial court to take evidence at a noticed hearing consistent with section 533 in order to resolve disputed factual matters essential to the court's reasonable exercise of discretion to modify or terminate a DVTRO. But here, Malinowski did not dispute the existence or substance of Judge Dabel's July 2021 visitation order, or the fact that the visitation order was in effect at the time Judge Holt was asked to modify the DVTRO. In the absence of a material factual dispute, Judge Holt could reasonably conclude an evidentiary hearing was not required for her to exercise her discretion to modify the DVTRO to avoid conflicts with existing court-ordered visitation.[8]

_____

[8] Indeed, even if section 533 supplied the exclusive bases for modification of a DVTRO, Judge Holt could reasonably conclude that the court's subsequent discovery of the July 2021 custody and visitation order after its issuance of the original DVTRO was "a material change in the facts upon which the . . . [original DVTRO] was granted," and/or that "the ends of justice would be served by the modification" in light of Malinowski's incomplete disclosure of facts from the dissolution case.

20

Moreover, the record contains no indication that Malinowski was deprived of adequate notice in this regard.  Malinowski does not contend she lacked notice of any of the hearings in question, and she knew from the trial court's order continuing the matter to November 17, 2021, that the amended DVTRO was set to expire at the end of that hearing.  Thus, Malinowski was on notice that the DVTRO could be terminated or extended based on matters discussed at the November 17 hearing, and germane to that discussion was the possibility that the DVTRO might be reissued with modified terms.  (Fam. Code, § 245, subd. (c).)  As for the subsequent hearings in January and March 2022, it was clear from the trial court's previous remarks that the purpose of the review hearings was to apprise the court of certain developments in the dissolution case that bore on the scope of the DVTRO and on issues pertaining to custody and visitation of the children.  Thus, Malinowski had sufficient notice that the court was poised to modify the DVTRO with respect to the children based on the information provided by the parties at the review hearings.

Having said this, we observe Malinowski's DVRO application alleged one incident of abuse occurring *after* the issuance of the July 2021 visitation order in the dissolution case.  The record does not disclose whether the August 2021 incident factored into Judge Holt's initial decision to issue the DVTRO, or whether she considered it in deciding to modify the DVTRO.  It is a close question whether this allegation by itself necessitated the taking of evidence at a noticed hearing before the court could reasonably exercise its discretion to modify the DVTRO to allow for court-ordered visitation, a question that, in our view, was not satisfactorily addressed in the briefing and arguments below or on appeal.  Accordingly, and in light of the mootness of the appeal, we limit our holding to the narrow but important question

21

discussed above—namely, that the standards of section 533 are not relevant to every DVPA case, but may, in an appropriate case, be applicable under principles of due process.

In closing, we emphasize that our decision is not intended to suggest that courts in DVPA proceedings are necessarily bound by a child visitation order when material evidence supports a ruling at odds with such an order. And though we conclude the DVPA does not categorically mandate adherence to section 533 for modification or termination of a DVTRO, courts should consider requiring evidence be presented at a noticed hearing when, for example, doing so would be necessary to protect a party's due process rights or essential to a court's reasonable exercise of discretion under section 245, subdivision (c).

## DISPOSITION

We conclude that section 533 does not provide the exclusive means or grounds by which a trial court in a DVPA action may modify or dissolve a DVTRO. However, due to the termination of the DVTRO in question, we need not issue a disposition on the modification orders and instead dismiss the appeal as moot. (Cf. *People v. Sweeney* (2009) 175 Cal.App.4th 210, 215, 225–226.) In the interests of justice, the parties shall bear their own costs on appeal.

_____

Fujisaki, Acting P. J.

WE CONCUR:


_____

Petrou, J.


_____

Rodríguez, J.


*Malinowski v. Martin* (A164713)

23

Trial Court:      San Mateo County Superior Court

Trial Judge:      Hon. Rachel Holt

Counsel:      Law Office of Gary K. Dubcoff, Gary Dubcoff, for Petitioner and Appellant

Seeley Family Law Practice, Helen Yvonne Seeley, and Jennifer L. Knops; Paul F. Vorsatz Law Office, Paul F. Vorsatz for Defendant and Respondent